**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 29, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOEY ISAAC RUBY,

Defendant-Appellant.

No. 11-1441

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 1:10-CR-00598-CMA-1)**

---

Barry A. Schwartz, Assistant Federal Public Defender, Appellate Division (Raymond P. Moore, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Appellant.

Michael C. Johnson, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief) Office of the United States Attorney, Denver, Colorado, for Appellee.

---

Before **KELLY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

Joey Ruby was on supervised release following a conviction for being a felon in possession of a gun. One of the conditions of his supervised release was

that Ruby not commit any other crimes. He was unable to abide by this condition, and was convicted of third-degree assault in Colorado state court. As a result, the district court revoked Ruby's release and sentenced him to eighteen months' imprisonment.

He now appeals the sentence on the grounds that the district court erred in considering hearsay testimony at sentencing from three witnesses to the assault. Because we conclude the district court did not err in considering the testimony, we AFFIRM the district court's sentence.

## I. Background

Ruby was placed on supervised release after being released from prison in October 2009. He had finished serving a thirty-seven month prison sentence stemming from a conviction for being a felon in possession of a gun. A year later, Ruby was arrested in Colorado for a traffic incident that led to charges of third-degree assault, DUI, domestic violence, reckless driving, and driving under restraint.

The parties advance differing versions of what transpired the night of the traffic incident. The following is undisputed: Ruby was in a car with three other individuals that crashed into a tree. The three individuals were Ruby's girlfriend, Melody Apodaca; Apodaca's daughter, Anastasia Aguilar; and another friend, Brandy Bobian. After the crash, Ruby and Apodaca got out of the car; there was some shouting, and some physical contact between Apodaca and Ruby. A

-2-

passerby, Cari Wojick, who was walking her dog at the time, saw Ruby throw Apodaca to the ground twice and heard him yell at her, "What are you doing? Are you trying to ruin my life?" R., Vol. 1, at 15–16.

At Ruby's trial in Colorado state court in April 2011, he was convicted of third-degree assault, but acquitted of the other charges. At sentencing, the trial judge speculated that the jury had based its conviction solely on the testimony of Wojick, who only saw Ruby throw Apodaca to the ground—and not that of Apodaca, who testified to a more brutal assault. Ruby was sentenced to time served.

After the trial, Ruby's federal probation officer filed a Petition for Arrest based on Ruby's conviction. The officer then submitted a Supervised Release Violation Report. The Petition and the Report detail a version of events much more violent than the undisputed version: Ruby had been driving the car home from a restaurant where the occupants of the car had eaten dinner and where Ruby had been drinking. During the drive, Ruby started yelling at Apodaca and driving recklessly. While still driving, Ruby punched Apodaca in the face. He then lost control of the car, which crashed into a tree. Ruby then dragged Apodaca out of the car, threw her to the ground, and continued punching her.

The events narrated in the Petition and the Report are copied from the Probable Cause Statement filed in county court, which, in turn, comes from the offense report completed by the police department. The offense report contained

Apodaca's statements to police and those of the other three witnesses (Wojick, Aguilar, and Bodian).

Prior to his revocation hearing, Ruby filed a written objection to the version of events contained in the report. He painted a very different picture of what happened: He claimed that Apodaca had been driving. They had an argument, then she "went crazy" and hit him in the face. R., Vol. 1, at 9. As a result, she crashed the car. Ruby then got out of the car and started walking away, as he had been instructed to do in his anger management class. Apodaca followed him and continued to hit him. He pushed her to the ground twice in his attempt to escape the situation.

At the revocation hearing, Ruby stipulated to the fact that he had violated his supervised release conditions. He also agreed that his conviction for third-degree assault was a crime of violence and that he had a Criminal History Category of III—resulting in a recommended sentencing range of eighteen to twenty-four months' imprisonment. But he did ask the court for a downward variance from the recommended sentence.

The district court denied Ruby's request for a downward variance. The court did not believe Ruby's version of events, instead crediting the version contained in the Violation Report. The court stated, "So I, frankly, Mr. Ruby, don't believe that you didn't punch her with a closed fist, that you merely threw her to the ground." R., Vol. 2, at 14–15. The court noted that Ruby's presentence

report described an incident in 2004—which resulted in a 2005 guilty plea—where Ruby had repeatedly punched Apodaca in the face, breaking her nose.

Ruby's counsel objected to the court's reliance on the Violation Report: "We are very hamstrung coming into this courtroom and having the facts of the case basically decided by a probable cause statement, with no really sort of safeguards against that, no testimony, no things like that." R., Vol. 2, at 15. But nonetheless, Ruby did not ask for an evidentiary hearing pursuant to the U.S. Sentencing Guidelines (USSG) § 6A1.3 or otherwise make specific objections at sentencing to the version of the accident produced by the government.

The district court imposed an eighteen-month prison sentence (the bottom end of the guidelines range) as well as twelve months of supervised release. Ruby now appeals his sentence. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II. Analysis

Federal Rule of Criminal Procedure 32.1(b)(2)(C) provides that at a revocation hearing, the defendant must have "an opportunity . . . to question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." This means that a court at a revocation hearing may consider hearsay evidence as long as it makes the necessary "interest of justice" determination.

Ruby argues the court did not comply with Rule 32.1's procedures and then compounded the mistake by basing his sentence on unreliable hearsay testimony.

### A. Standard of Review

When reviewing a district court's sentence following revocation of release, we look to whether the sentence was "substantively reasonable" and "procedurally reasonable." *United States v. McBride*, 633 F.3d 1229, 1231–32 (10th Cir. 2011). We review for abuse of discretion. *See id.* at 1232. We review findings of fact, however, for clear error and legal determinations de novo. *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). Ruby's argument is not that his sentence was substantively unreasonable, but that his due process rights were violated because of unreliable hearsay evidence. Because unreliable hearsay evidence can result in a sentence based on erroneous facts, we construe Ruby's argument as an objection that his sentence was procedurally unreasonable. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (noting that procedural error in sentencing includes "selecting a sentence based on clearly erroneous facts").

Objections to procedural reasonableness that are not contemporaneously raised, however, are subject to plain error review. *See United State v. Gantt*, 679 F.3d 1240, 1246–47 (10th Cir. 2012) (reviewing for plain error non-contemporaneous objection to court's alleged procedural failure to explain reasoning behind sentence). Under plain error review, the defendant must demonstrate (1) there is error, (2) that is plain, (3) which affects substantial

rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

### B.  *Rule 32.1(b)(2)(C) and Sentencing Hearings*

Ruby first contends the court erred in relying on hearsay at his revocation hearing without making the requisite "interest of justice" finding under Rule 32.1(b)(2)(C).  Because Ruby did not invoke Rule 32.1(b)(2)(C) below, we review his objection on appeal for plain error.  He argues that Rule 32.1 applies not only to the guilt phase of a revocation hearing, but also to the sentencing phase.  We disagree.

Rule 32.1 was enacted to codify due process guarantees that apply to revocation hearings.  *See Curtis v. Chester*, 626 F.3d 540, 545 (10th Cir. 2010). In particular, the rule was designed to ensure at revocation hearings the ability of defendants to an independent judicial officer and the right to adversary proceedings.  In this way, the Rule embodies the holdings of two Supreme Court cases, *Morrissey v. Brewer*, 408 U.S. 471 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973).

*Morrissey* acknowledged that while a parolee facing revocation of his liberty does not have "the full panoply of rights due a defendant" in a criminal prosecution, he is entitled to an independent officer at the preliminary hearing and the right to be heard at a final revocation hearing before entry of judgment.  408

U.S. at 480, 485–90.  A parolee also has the right "to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."  *Id.* at 489.

Following the lead of *Morrissey,* the Supreme Court in *Gagnon* held that the due process interests at stake when revoking parole are identical to those at stake when revoking probation.  411 U.S. at 781–82.  Though parole no longer exists in the federal sentencing system, supervised release is its functional equivalent and thus involves the same due process interests.  *Cf. Curtis*, 626 F.3d at 545 (suggesting equivalency of parole, probation, and supervised release for purposes of due process).

The purpose of these hearings is to ensure that the decision to revoke a parolee or probationer's freedom is not based on "erroneous information." *Morrissey*, 408 U.S. at 484.  To guarantee the accuracy of the revocation decision, the rule ensures, among other things, that a probationer or parolee has notice of the alleged violation, the opportunity to present evidence, and the opportunity to question adverse witnesses unless the court determines otherwise.  Fed. R. Crim. P. 32.1(b)(2)(A)–(C).  Once a probationer or parolee admits his guilt, as was the case here, there is no danger that the revocation decision will be based on erroneous information.  Because the only task left to the court is to determine the proper sentence, the sentencing phase of a revocation hearing is governed by the rule surrounding normal sentencing, Rule 32, not Rule 32.1.  *See United States v.*

*Carper*, 24 F.3d 1157, 1160 (9th Cir. 1994) ("Rule 32.1 thus governs the decision of whether or not to revoke supervised release, while Rule 32 governs the decision of what sentence to impose.").

Consistent with these cases, we discern no meaningful difference between sentencing at a revocation proceeding and sentencing after a guilty plea or jury verdict of conviction. In both instances, a violation or criminal offense has been proven or admitted and the only task of the court is to determine the proper sentence. The task of sentencing is distinct from the task of adjudicating guilt, and therefore warrants a different set of rules. *See United States v. Littlesun*, 444 F.3d 1196, 1200 (9th Cir. 2006) ("A court is presented with quite a different set of circumstances when it has to decide *whether* someone is guilty and must go to prison than when it is deciding *how long* a convicted criminal must serve." (emphasis in original)).

Unlike at a criminal trial where the Federal Rules of Evidence limit the types of admissible evidence, at a sentencing hearing the court can have access to any relevant information, as long as it adheres to a preponderance of the evidence standard. *See* USSG § 6A1.3. Sentencing courts historically rely on a wide array of information relevant to the individualized needs of the offender, including hearsay evidence containing a minimal indicia of reliability. *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995).

Under these principles, a sentencing court need not make an "interest of justice" determination in the circumstances here. First, Ruby did not ask to present witnesses, nor did the court deny him any opportunity to produce evidence demonstrating his version of the facts. Even so, he suggests we extend Rule 32.1 to enact a heightened standard of reliability for evidence proffered at revocation sentencing by adopting a balancing test. The balancing test would require a court to balance the offender's right to confront witnesses with the government's good cause for denying the right.

In support of this argument, Ruby points to *United States v. Lloyd*, 566 F.3d 341 (3d Cir. 2009). In *Lloyd*, the defendant was on supervised release when he was convicted of being a felon in possession of a gun in another jurisdiction. When he refused to stipulate to the fact of his conviction at the revocation hearing, the government offered proof of conviction with the judgment and plea agreement from the other jurisdiction. The government also claimed that the defendant had committed domestic battery against his girlfriend, a fact which it supported with her out-of-court statements. The district court determined that the battery had occurred, which increased the defendant's sentencing range from 4-10 months to 12-18 months.

On appeal, the Third Circuit found that the firearms violation, proven by non-hearsay evidence, was sufficient to justify the revocation. The only question was whether the sentencing range had been properly calculated based on the

girlfriend's hearsay statements contained in a violation report. *Id.* at 344. The Third Circuit assumed that Rule 32.1(b)(2)(C) applied and adopted the balancing test. *Id.* at 344–45. Because the district court had not made the requisite finding under Rule 32.1(b)(2)(C) to justify the absence of the witness, the court vacated the sentence and remanded for resentencing. *Id.* at 346.

*Lloyd*'s treatment of Rule 32.1 is not persuasive. First, the court did not address the predicate question of whether Rule 32.1 should even apply at the sentencing phase because the question was not raised on appeal—and (most likely) because the district court appeared to have accepted all the evidence during the guilt phase of the hearing, where Rule 32.1(b)(2)(C) *does* apply. Furthermore, other courts have concluded in unpublished opinions the exact opposite of *Lloyd* at the sentencing phase (though also without discussion) and assumed Rule 32.1(b)(2)(C) does not apply. *See United States v. Prescott*, 360 F. App'x 209, 211 (2d Cir. 2010) (noting, in the context of the sentencing phase of a revocation proceeding, that "it has long been held that a district court may consider hearsay evidence in sentencing proceedings"); *United States v. Pardee*, 224 F. App'x 650, 651 (9th Cir. 2007) (refusing to apply Rule 32.1(b)(2) to the admissibility of hearsay when defendant already admitted to having violated his supervised release conditions). We agree with those courts and the logic behind the relaxed standard at sentencing.

As a final argument, Ruby points to the plain language of Rule 32.1(b)(2), arguing that it does not differentiate between the guilt and sentencing phases of a revocation hearing. Yet this silence cuts against Ruby's argument. Following *Morrissey*, Rule 32.1(b)(2) was promulgated in the background of established case law that allowed the admission of hearsay evidence at sentencing. *See Williams v. New York*, 337 U.S. 241, 249–52 (1949) (admission of hearsay evidence at sentencing did not violate due process). And "neither *Morrissey* nor the Federal Rules of Criminal Procedure say anything about *Williams* or the right to examine adverse witnesses at sentencing." *Littlesun*, 444 F.3d at 1200. Given the similar interests at stake—and the absence of evidence to the contrary—we cannot conclude that the Supreme Court sought to carve out an exception to normal sentencing law in revocation proceedings.

In sum, nothing in Rule 32.1 requires that the hearsay evidence at issue here be subject to a different, or higher, level of admissibility than it would be at other types of sentencing proceedings. Ruby did not seek to examine the government's witnesses, nor was he prevented from producing corroborating witnesses or other evidence. Thus, he has less reason to complain about the procedures the court used at sentencing.

We conclude that Rule 32.1(b)(2)(C) does not apply to the sentencing phase of a revocation proceeding.[1] Accordingly, the court made no error.

## C. Admissibility of Hearsay at Sentencing

Even though Rule 32.1(b)(2)(C) does not apply to the sentencing phase of a revocation proceeding, Ruby challenges the evidence the district court relied on at sentencing. He argues the evidence was unreliable because it consisted of hearsay from a police report of his accident and assault. Ruby did not make a specific hearsay challenge to the evidence below, nor did he attempt to show the evidence was flawed through his own testimony, the testimony of other witnesses, or the police statement itself. We therefore review Ruby's objection for plain error.[2]

District courts are not strictly bound by the Federal Rules of Evidence at sentencing hearings. *United States v. Browning*, 61 F.3d 752, 755 (10th Cir.

---

[1] Because we conclude that Rule 32.1(b)(2)(C) does not apply to the sentencing phase of a revocation proceeding, we decline to address Ruby's argument that we should jettison the "reliability test" for what constitutes good cause under Rule 32.1(b)(2)(C) and instead adopt a "balancing test." *See Curtis v. Chester*, 626 F.3d 540, 546 (10th Cir. 2010) (declining to address whether the balancing test should prevail over the reliability test because hearsay evidence at revocation proceeding was admissible under either test).

[2] During the sentencing phase of the revocation proceeding, Ruby's counsel stated, "We are very hamstrung coming into this courtroom and having the facts of the case basically decided by a probable cause statement, with no really sort of safeguards against that, no testimony, no things like that." R., Vol. 2, at 15. This is not a clear enough objection to avoid plain error review on appeal.

1995); *see also* USSG § 6A1.3, cmt. ("In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial." (citations omitted)).  As a result, "hearsay statements may be considered at sentencing if they bear some minimal indicia of reliability."  *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012) (citation omitted).  This reliability floor is a requirement of due process.  *See United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008) (noting that "the due process clause protects a defendant's right not to be sentenced on the basis of materially incorrect information").

Corroborating evidence is often key to determining whether a statement is sufficiently reliable.  *See United States v. Todd*, 515 F.3d 1128, 1136 & n.6 (10th Cir. 2008) (affirming district court's reliance on hearsay evidence regarding drug sales by defendant where other evidence corroborated it); *United States v. Fennell*, 65 F.3d 812, 813–14 (10th Cir. 1995) (reversing district court where sentencing enhancement was based solely on hearsay statement by defendant's ex-girlfriend with no other corroborating evidence); *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990) (affirming sentencing judge where enhancement based on defendant's leadership role in drug operation was "corroborated by physical and documentary evidence at the trial and by appellant's admissions at his sentencing hearing").

Ruby argues the district court erred in relying on the statements contained in the Petition and Violation Report when it refused to grant Ruby a downward

variance from the guideline range.  On appeal, Ruby contends that the petition contains several layers of hearsay which make the statements particularly unreliable.  Yet Ruby exaggerates the extent of the hearsay.  In fact, all the documents at the hearing were based on the post-accident police report, and Ruby did not even raise in the district court any hearsay-on-hearsay concerns.[3]

Ruby relies largely on two cases, *Fennell*, 65 F.3d 812, and *Lloyd*, 566 F.3d 341, to argue that the hearsay in this case was unreliable.  In *Fennell*, we reviewed a sentence enhancement for possession of a machine gun based solely on his estranged girlfriend's unsworn telephone statement to a probation officer that the defendant had fired the machine gun at her.  65 F.3d at 813.  The court found her statement insufficiently reliable because the girlfriend did not prepare a sworn affidavit, the interviewing officer was not able to observe her demeanor, and there was no other corroborating evidence.  *Id.*  Similarly, in *Lloyd*, the district court enhanced a defendant's sentence based on allegations of domestic battery.  566 F.3d at 344.  Yet there was no independent corroborating evidence for the battery beyond the victim's cursory statement.  *Id.* at 345.

---

[3] Ruby implies that the admitted documents might have contained some transcription errors, but if there was any doubt that the statements had been distorted or lost in the transcription from the original police report to the Violation Report, Ruby could have easily pointed it out below.  He provided excerpts from the original police report as an attachment to his written objection to the Report, which suggests he had access to the entire report.  Because he did not object to multiple levels of hearsay, and did not introduce the full police report below, we will not further discount the reliability of the statements in the Violation Report.

The statements here are more reliable.  Unlike in those cases, where the sole witness had reasons to lie, here the corroborating statements of three relatively neutral witnesses help establish the reliability of Apodaca's statement to the police officer.  Apodaca's daughter and the other female passenger contemporaneously confirm Apodaca's version of the events, while Wojick (the uninvolved witness) saw Ruby throw Apodaca to the ground twice and yell at her, an observation entirely consistent with Apodaca's version of events.  These additional witnesses, who spoke in person to the police officer, dispel the doubt that might otherwise hang over the out-of-court testimony of a witness with an axe to grind.  *See United States v. Caiba-Antele*, No. 11-2140, --- F.3d ---, at *10 (10th Cir. Jan. 23, 2013) (finding sufficient indicia of reliability in corroborating statements given in person to detectives by multiple victims of sexual abuse). Nor did Ruby testify at the sentencing hearing to a contrary set of facts, or ask the court to consider additional documents—other than his written objection to the Report—or the testimony of other witnesses.

The district court also relied on the fact that Ruby pleaded guilty to an assault charge in 2005 for having punched Apodaca in the face in 2004.  The incident helps amplify Ruby's capacity for violence and further supports Apodaca's statement that she was struck in the face.  While prior incidents are not necessarily probative of later conduct, Fed. R. Evid. 404(a), this type of evidence

-16-

may help establish another piece of the "minimal indicia of reliability" necessary to consider hearsay at sentencing. *Damato*, 672 F.3d at 847; *see also* USSG § 6A1.3(a) ("In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial . . . ."); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, *character*, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." (emphasis added)). Ruby's prior conduct thus is certainly relevant to the district court's findings of fact and this court's overall assessment of the reasonableness of the sentence.

Ruby tries to discredit Apodaca's statements by pointing to the acquittals in his state court trial. The fact that Ruby was only convicted of third-degree assault in his state court trial, and not the other offenses—which relied upon Apodaca's testimony—bears little on whether the district court was justified in considering the proffered evidence. As the government points out, a jury needs to be convinced beyond a reasonable doubt to convict a defendant, whereas a court imposing a sentence need only make a finding of fact by a preponderance of the evidence. Thus, little can be inferred from Ruby's acquittal on the other charges.

To be sure, none of the facts surrounding the incident resolve concerns about the level of hearsay between the interviewing officer and the reporting

officer (if that level of hearsay even existed), or about the officer's accuracy in writing down the witnesses' statements. *See, e.g.*, *Lloyd*, 566 F.3d at 346 (noting that "police reports are neither 'inherently reliable [nor] . . . inherently unreliable'" (citations omitted)). Yet because Ruby did not place the full police report in the record, there is nothing to support his claim that someone other than the interviewing officer wrote the report.

In the end, Ruby did not object below to the admission of hearsay, let alone multiple levels of hearsay. We review for plain error, and even if the district court erred we cannot say that any error was "plain, . . . affects substantial rights, and . . . seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (citation omitted). Accordingly, we must reject Ruby's challenge to the evidence offered at sentencing.

## III. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.