**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 22, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

RAMON VELASCO, a/k/a/ Gordo, a/k/a
Ramone Velasco,

  Defendant - Appellant.

No. 13-5009
(D.C. No.  4:12-CR-00132-GKF-1)
(N.D. Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **HOLMES**, and **BACHARACH**, Circuit Judges.

---

Defendant Ramon Velasco was convicted of conspiracy to distribute

methamphetamine and possession with intent to distribute methamphetamine.  The

United States District Court for the Northern District of Oklahoma sentenced him to 188

months in prison.  He appeals his sentence on two grounds, asserting that there was

---

  * After examining appellant's brief and the appellate record, this panel has
determined unanimously that oral argument would not materially assist the determination
of this appeal.  *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is not
binding precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 and 10th Cir. R. 32.1.

insufficient evidence of the drug quantity used to compute his offense level under the

United States Sentencing Guidelines, and that the prosecution's failure to correct

a codefendant's false trial testimony about his criminal history violated Defendant's due-

process rights at sentencing.[1]  We conclude that there was sufficient evidence and that

Defendant's due-process rights were not violated.  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

## I.    SENTENCE CALCULATION

Defendant and five others—Roberto Urbina, Juan Escalera, Jimmy Luna, Lisa

Fernandez, and Jeremy Haar—conspired to distribute methamphetamine.  Defendant was

the leader and supplier; Urbina received methamphetamine from Defendant and gave it to

Luna, who sold to retail distributors Fernandez and Haar; Escalera transported and stored

money and drugs.

The following is undisputed:  Fernandez and Haar were arrested with 31.1 grams

of methamphetamine (an ounce is 28.35 grams).  Fernandez said that she obtained at least

a quarter of an ounce from Luna at least 50 times, and Haar said that he obtained

methamphetamine from Luna about 25 times.  Luna was arrested with 13.42 grams of

methamphetamine and 38 grams of cocaine base.  Upon his arrest he said that he had

been selling methamphetamine for Urbina for two months and had sold at least

16 pounds.  Urbina was arrested with 359.8 grams of methamphetamine.  Escalera, who

---

[1]  Defendant concedes, and we agree, that Defendant would not be entitled to a new trial because he cannot show prejudice from the allegedly false testimony.

was arrested with .42 grams of methamphetamine, reported that Defendant once had him store half a kilogram of cocaine, and on another occasion had him transport half a kilogram.

Based on this account, the PSR attributed to Defendant 18 pounds (8.1 kilograms) of methamphetamine and one kilogram of cocaine, or a total marijuana equivalent of 16,400 kilograms, leading to a base offense level of 36 (the offense level for 10,000 to 30,000 kilograms of marijuana, *see* U.S.S.G. § 2D1.1(c)(2)). It added two levels for Defendant's role as an organizer of the conspiracy, *see id.* § 3B1.1(c), raising his total offense level to 38. With a criminal-history score of zero, Defendant was in criminal-history category I. His guideline sentencing range was therefore 235 to 293 months' imprisonment.

Before sentencing, Defendant moved for a downward variance, asserting, among other things, that Luna's statements were untrustworthy because Luna lied about his criminal history during the trial. In support of the motion, Defendant filed a printout of Luna's criminal history from the Kansas Criminal Justice Information System. The printout showed that Luna had been convicted of not just the cocaine-related offense he admitted to at trial, but also burglary and attempted aggravated sexual battery more than 20 years earlier.

After acknowledging Luna's convictions, the district court overruled Defendant's objection to the 18-pound quantity determination. It noted that the amount attributed to Defendant was the same as the amount attributed to Urbina in his PSR, to which Urbina

had not objected, and that the amount was based not only on Defendant's relationship with Luna, but also on his relationship with Urbina and Escalera. Finding the guideline range excessive, however, the court varied downward two levels, resulting in a guideline range of 188 to 235 months. It sentenced Defendant to 188 months, at the bottom of that range.

## II.    ISSUES ON APPEAL

### A.    Drug Quantity

We review the district court's factual findings regarding drug quantity for clear error and will reverse only if a finding was without adequate factual support in the record. *See United States v. Foy*, 641 F.3d 455, 468 (10th Cir. 2011). When the drugs themselves were not seized, "the trial court may rely upon an estimate . . . so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." *Id.* at 468–69 (internal quotation marks omitted).

There is adequate support in the record. Defendant does not challenge the recitation of quantity in the PSR (which totals more than eight kilograms, three more than necessary for Defendant's offense level), except for the accuracy of Luna's statement that he sold at least 16 pounds of methamphetamine for Urbina. He contends that Luna's false testimony about his prior convictions rendered his statements unreliable. But Luna's statement was made to an investigating officer promptly after his arrest, when admitting to being a substantial dealer could be damaging to him. His reliability was further buttressed in the next few days as law enforcement corroborated other information

4

that he gave to the officer, including information about Urbina and Defendant and a future deal Urbina had planned. His assertion of quantity was also corroborated by evidence that Urbina (and hence Defendant) were trafficking in large quantities of methamphetamine. In particular, an investigating officer arranged (through Luna) a deal with Urbina to buy a pound of methamphetamine. Urbina said that he would be ready to deliver on Saturday morning. By the time they were able to schedule the deal on Monday, Urbina had sold more than half of the pound to someone else, but he promised that he would soon be able to get more drugs to make up the difference. Moreover, Urbina did not object to the attribution to him in his own PSR of 8.1 kilograms of methamphetamine. We hold that Luna's 16-pound statement was sufficiently reliable for sentencing purposes. *See United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013) (corroborated hearsay may be sufficiently reliable to support findings at sentencing hearings).

Defendant also claims that "[t]he district court supported its finding with a demonstrably incorrect reading of the record—that Mr. Urbina's testimony regarding the drug quantity (four or five pounds) was consistent with that of Mr. Luna (at least 16 pounds)." Aplt. Br. at 10 (internal quotation marks omitted). The district court's actual language was that Urbina's "reports to law enforcement were consistent" with Luna's "statements . . . from the stand." R.,Vol. 2 at 283. We do not read the court's words as stating that Urbina and Luna agreed in every particular, only that they agreed in general import. We are not persuaded that the court's findings were based on an

inaccurate recollection of the trial testimony.

**B.** *Napue/Brady*

Defendant also asserts that his case should be remanded for resentencing under *Napue v. Illinois*, 360 U.S. 264 (1959), and *Brady v. Maryland*, 373 U.S. 83 (1963), because the prosecution failed to correct Luna's false statements about his criminal history, thereby violating Defendant's due-process rights at sentencing. This argument has no merit. *Napue* and *Brady* "established the principle that criminal convictions obtained by presentation of known false evidence or by suppression of exculpatory or impeaching evidence violates the due process guarantees of the Fourteenth Amendment." *Douglas v. Workman*, 560 F.3d 1156, 1172 (10th Cir. 2009). No due-process violation occurs, however, if *Brady* material is disclosed in time for the defendant to make use of it. *See United States v. Burke*, 571 F.3d 1048, 1053 (10th Cir. 2009). No violation occurred in this case because Defendant obtained Luna's criminal-history record before trial, cross-examined him about it during trial, and presented the evidence to the district court before and during the sentencing hearing.

**III. CONCLUSION**

We AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

6