**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MILTON MANUEL NUNEZ-ROMERO,

    Defendant - Appellant.

Nos. 23-2033 & 23-2034
(D.C. Nos. 5:21-CR-00215-MIS-1 &
2:22-CR-01366-MIS-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **MURPHY**, Circuit Judges.[**]
_____

Defendant Milton Manuel Nunez-Romero is a citizen of Honduras.  On May 30,

2022, border agents in Dona Ana County, New Mexico, apprehended him walking

through the desert.  This was the fourth documented time Defendant had entered the

United States illegally.  Defendant subsequently pleaded guilty to illegal reentry after

deportation, in violation of 8 U.S.C. § 1326(a) and (b).  Defendant also admitted his

reentry violated the terms of his supervised release imposed as a result of a prior 2020

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.

illegal reentry conviction. Defendant's advisory guideline range on his latest reentry offense was 10 to 16 months' imprisonment. The applicable range for his supervised release violation was 6 to 12 months' imprisonment. But the district court, after providing Defendant the required notice, varied upward on the reentry offense and sentenced Defendant to 34 months' imprisonment. On the supervised release violation, the court sentenced Defendant to 12 months, the high end of the guideline range. The court ordered the two sentences to run consecutively. In these consolidated appeals, Defendant appeals the entirety of his 46-month sentence contending it is procedurally unreasonable. Specifically, Defendant argues that in imposing sentence, the district court committed plain error by (1) relying on sexual abuse allegations presented in his presentence investigation report (PSR), and (2) failing to make specific findings on the reliability of those allegations. Our jurisdiction arises under 18 U.S.C. § 3742(a). We affirm.

I.

The facts presented in the PSR—facts to which Defendant did not object at sentencing—detail Defendant's criminal history. While illegally residing in the City of Clovis within Curry County, New Mexico, Defendant was convicted in May 2009 of aggravated DWI. Following this conviction, immigration authorities deported Defendant. Defendant returned to Curry County sometime thereafter, and, in the spring of 2013, was again convicted of DWI. Following his second DWI conviction, the Government charged Defendant with illegally reentry of a removed alien. Defendant

pleaded guilty and in July 2013 was deported a second time. Defendant then returned to the United States a third time.

Defendant was again living illegally in Curry County when state authorities charged him in October 2016 with criminal sexual contact of a minor under 13 years of age. Following a trial, Defendant was acquitted. The only information before the district court regarding this particular incident was contained in the PSR itself. According to the PSR, "[o]ffense reports indicate" that D.S., age 12, was jumping on a trampoline with her cousin Y.P., age 8, at Y.P.'s house. Defendant was dating Y.P.'s mother, Ludivina, at the time. While Ludivina was at the store, Defendant told Y.P. to go inside and get him a beer. According to D.S., Defendant then asked D.S. for her phone number because he wanted to get to know her. She told him she did not have a phone and was not allowed to see anyone. At that point, Defendant grabbed D.S. and began kissing her, forcing his tongue inside her mouth and rubbing his hand across her chest. D.S. began crying and struggled to get away from Defendant. The Defendant let her go and she ran home and told her parents what had occurred.

In December 2020, Defendant was again arrested in Curry County. This time state authorities charged him with four counts of criminal sexual penetration of a minor under 13 years of age, one count of criminal sexual contact with a minor, and two counts of intimidation of a witness. According to the PSR, sometime between December 2018 and October 2019, Defendant forced Y.P., then 11 years old, to perform oral sex on him. Defendant performed oral sex on Y.P. as well. Defendant threatened harm to both Y.P. and her mother, Ludivina, if Y.P. told anyone about the abuse. Y.P.

3

first reported Defendant's sexual abuse to a school counselor after suffering a panic attack at school.  The same day Defendant was charged in state court, he also was charged in federal court with reentry of a removed alien.  Defendant was again deported in August 2021.  As a result of his deportation, the state charges against him were dismissed without prejudice.  Defendant's fourth illegal reentry into the United States led to the present charges and his current 46-month sentence of imprisonment.

In support of the sexual abuse allegations involving Y.P., the Government at sentencing offered (1) Clovis police department reports, (2) a forensic interview report, and (3) Defendant's arrest warrant with accompanying affidavit.  According to the first police report, attached to the PSR as Exhibit B, Officer Alexis Lopez responded to a report of sexual abuse on January 31, 2020.  Upon arrival at Y.P.'s elementary school, Lopez spoke with Martha Weston, a school counselor.  Weston informed Officer Lopez that Y.P. began to experience anxiety while in class.  Weston asked Y.P. about her anxiety.  Y.P. responded by telling Weston "of an incident with her mother's ex-boyfriend forcing her to do sexual activities."  Officer Lopez then spoke with Y.P. and her mother Ludivina.  Y.P. stated that she, her mother, and Defendant were watching a movie at her home when Ludivina decided to take a shower, leaving Y.P. and Defendant alone in the living room.  Defendant touched Y.P.'s genital area and breast and then forced her to perform oral sex on him.  Defendant told Y.P. that if she told anyone, he would harm her or whomever she told.  Y.P. also spoke of a second similar incident that again ended with Defendant threatening Y.P. and others with harm.  Investigator Rick

4

Smith reviewed Officer Lopez's report and received permission from Ludivina on February 3, 2020, to set up an Oasis Safehouse forensic interview with Y.P.

On February 7, 2020, forensic interviewer Mindy Sena met with Y.P. at the Oasis Safehouse. The forensic interview report is attached to the PSR as Exhibit A. At the outset of the interview, Y.P. told Sena that her "mom's friend," "Milton Nunez" sexually abused her when she was 10. Y.P. told Sena that the abuse occurred "twice" at her house "[i]n the living room on the couch." Among the lurid details, Y.P. stated Defendant reached into her panties and "put his private part in my mouth. And when he put his finger in my vagina, he grabbed my breast over my clothes and then put his hand under my shirt, but over my bra. He put his penis in my mouth both times." Y.P. "tried to get up but he pulled me back." When asked if Defendant said anything, Y.P, stated "[h]e told me not to tell anyone or he'll hurt them."

In a follow up police report dated February 10, 2020, a part of Exhibit B to the PSR, Investigator Smith submitted his account of Y.P.'s safehouse interview. In attendance at the interview were Smith, Sena, a deputy district attorney, a district attorney victim advocate, and a district attorney K-9 handler and her canine. Smith reported Y.P. was "very verbal and engaged in the interview" with Sena. "During the initial part of the interview [Y.P.] appeared relaxed and comfortable. She was articulate and seemed confident. [Sena] asked [Y.P.] if she knew why she was here and her demeanor visibly changed. She became very quiet, hesitant, and emotional. She began to cry." Consistent with Officer Lopez's earlier report, Y.P. recounted having a panic attack at school and speaking with her counselor. During the forensic interview, Y.P.

5

"revealed that there were two separate occasions when [Defendant] had sexually abused her." The first incident occurred around December 2018, just before Y.P. began her first menstrual cycle. The second incident occurred around October 2019. Both incidents occurred on the couch in Y.P.'s living room after her mother had left the room to take a shower. Investigator Smith's report sets forth the details of both incidents as described by Y.P., details we need not repeat here. Suffice to say those details do not differ in any material way from what Y.P. had previously recounted. Smith reports that near the end of the interview, Sena asked Y.P. if she could talk to her mother about Defendant's actions. Y.P. "said she could not talk to her about what [Defendant] did to her. She was scared that [Defendant] would hurt them." Sena asked Y.P. why she decided to tell her school counselor about the abuse. Y.P., "teary eyed through most of the interview," told Sena "that she couldn't take the weight of it anymore." Investigator Smith concluded his report by stating he believed Defendant had sexually abused Y.P. on two separate occasions, the first "between the 1st day of December 2018 and the 31st day of December 2018," and the second "between the 15th day of September 2019 and the 15th day of October 2019," both times in Curry County, New Mexico.

Per Exhibit B to the PSR, on February 13, 2020, a deputy district attorney approved Investigator Smith's affidavit in support of an arrest warrant for Defendant. The affidavit and arrest warrant are attached to the PSR as Exhibit C. According to another police report attached to the PSR as part of Exhibit B, the chief state district judge approved a Curry County Magistrate Court arrest warrant for Defendant the next day based on probable cause to believe Defendant committed (1) one crime of

6

"[c]riminal sexual contact of a minor in the 2nd degree (child under 13, unclothed), a second degree felony," (2) four crimes of "[c]riminal sexual penetration in the 1st degree (child under 13 years of age), a first degree felony," and (3) two crimes of "intimidation of a witness (intimidating or threatening to prevent reporting), a third degree felony." (capitalizations omitted).

## II.

At the sentencing hearing, Defendant stated he had no objections or corrections to the PSR. As for the state criminal charges of sexual abuse against Defendant previously dismissed without prejudice due to his third deportation, the Government informed the district court that the State of New Mexico again intended to pursue those charges and had filed detainer paperwork with the United States Marshal's Service. Prior to sentencing, Defendant had only this to say about the sexual abuse charges: "I've faced this two times now, but I can hold my head up high because I know that I'm not the person that they say did this. And I think I can go feeling good to go face those charges because I know that this was not me." Defendant said nothing further.

In imposing sentence for Defendant's illegal reentry, the district court considered Defendant's past behavior pursuant to the § 3553(a) factors. The court found that a guideline sentence "for someone with his prior convictions will [not] adequately deter the Defendant." The court also expressed concern about protecting the public, observing that Defendant had been convicted twice of DWI and had been accused twice by two young girls of sexual assault. The court concluded that a "much higher sentence" than the guideline range was justified "because the Defendant reentered this

country illegally for the third time after committing two DWIs and being accused twice of sexual assault of children.  He returned only months after his prior removal, again, while still on supervised release."

On appeal, Defendant raises two issues surrounding the sexual abuse allegations against him.  We may promptly dispose of his claim that the district court committed plain error by failing to make specific findings on the reliability of those allegations. Federal Rule of Criminal Procedure 32(i)(3)(B) states that a sentencing court "must— for any disputed portion of the presentence report or other controverted matter—rule on the dispute" if it intends to rely on such "disputed portion" or "controverted matter" in imposing sentence.  Our precedents plainly state, however, that "to invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make *specific* allegations of factual inaccuracy," something Defendant did not do in this case.  *United States v. McDonald*, 43 F.4th 1090, 1096 (10th Cir. 2022) (emphasis added) (quoting *United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008)).  Defendant's blanket denial to the PSR's sexual abuse allegations does not alone establish the existence of a "dispute" or "controverted matter" within the meaning of Rule 32(i)(3)(B). *Chee*, 514 F.3d at 1115.  Defendant "had an affirmative duty to make a showing that the information in the PSR was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate."  *McDonald*, 43 F.4th at 1096 (internal brackets omitted) (quoting *Chee*, 514 F.3d at 1115).  Because Defendant did not even attempt to make such showing, the district court was under no obligation to make *specific* findings regarding the veracity of the PSR's sexual abuse allegations.

8

Defendant's next claim—that in imposing sentence the district court relied on unreliable hearsay about the sexual abuse allegations—requires a bit more discussion. Unreliable hearsay evidence may cause a district court to render a sentence based on erroneous facts, resulting in a violation of a defendant's due process rights and a procedurally unreasonable sentence. *United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013). Because Defendant did not raise an objection to the procedural reasonableness of his sentence based on unreliable hearsay before the district court, our review is for plain error. *Id*. This standard requires, among other things, that any error must be "plain." "An error is plain if it is clear or obvious at the time of the appeal. In turn, an error is clear or obvious when it is *contrary to well settled law*." *United States v. Salas*, 889 F.3d 681, 686–87 (10th Cir. 2018) (emphasis added) (internal brackets, citations and quotations omitted).

With this in mind, we observe that the facts of the present controversy appear to reside somewhere between those from two of our binding precedents, one resolved in favor of the defendant and the other in favor of the Government. The principal Tenth Circuit case on which Defendant relies is *United States v. Fennell*, 65 F.3d 812 (10th Cir. 1995). In *Fennell*, we held unsworn testimony of a girlfriend taken over the telephone by a probation officer lacked "the minimal indicia of reliability required" by the Guidelines to alone support a sentencing enhancement for using a machine gun in connection with a felonious assault. *Id*. at 813; *see United States v. Cook*, 550 F.3d 1292, 1295 (10th Cir. 2008) (A district court is permitted to consider hearsay statements at sentencing so long as those statements bear "some minimal indicia of reliability.").

In so holding, we explained that the testifying probation officer—the sole witness at sentencing—"did not have an opportunity to observe [the girlfriend's] demeanor during the interview and therefore could not form any opinion as to her veracity." *Fennell*, 65 F.3d at 813. We further observed that "no other evidence" corroborated the officer's hearsay account.[1] *Id*.

The Government, meanwhile, points principally to our decision in *Cook* to support its position. In *Cook*, we upheld a sentencing enhancement to a felon in possession charge based on a district court's finding that the defendant while in possession of a shotgun had more likely than not committed felony menacing, a charge state authorities previously had brought against the defendant but later withdrawn. 550 F.3d at 1294. The district court based its finding on the following: (1) a police officer's affidavit describing his interviews with two witnesses to the alleged menacing, (2) another police officer's narrative remarks from a police report describing his phone conversation with one of the witnesses, and (3) an ATF report of the investigation that also related the accusations of the witnesses. We held this evidence exhibited the necessary indicia of reliability based on three factors. First, the officers "had the opportunity to observe [the witnesses'] demeanor and form an opinion regarding their veracity." *Id*. at 1297. Second, the witnesses corroborated the sequence of events that

---

[1] The other Tenth Circuit case on which Defendant principally relies is our unpublished decision in *United States v. Padilla*, 793 F. App'x 749 (10th Cir. 2019). In that case, Defendant properly preserved his objection that the district court clearly erred in making factual findings at sentencing by relying only on a police report the Government did not offer into evidence. We held that before the district court could rely on such report, the Government must enter it into evidence and the court must determine it bore sufficient indicia of reliability. *Id*. at 757–58.

transpired. *Id*. Third, one of the witnesses at a later date retold the same version of events to another police officer over the phone. *Id*.

The present controversy seems to us somewhat more like *Cook* than *Fennell*. Multiple individuals had the opportunity to observe Y.P.'s demeanor while she recounted the abuse on two separate occasions. None of these individuals—a school counselor, a police officer, a forensic interviewer, and a police investigator—questioned Y.P.'s credibility or truthfulness. In his report, Investigator Smith specifically stated he believed Defendant had sexually abused Y.P. on two occasions approximately nine months apart. His affidavit in support of Defendant's arrest warrant stated the same belief. The narrative remarks of Officer Lopez describing his initial encounter with Y.P. at school, while not as detailed, were consistent with Investigator Smith's recitation of the facts.

The notable difference between this case and *Cook* is that in *Cook* two individuals witnessed the defendant's menacing and reported it to police. Here, unsurprisingly, Defendant was alone with Y.P. both times he is alleged to have sexually abused her. To be sure, we have observed that at sentencing "[c]orroborating evidence is often the key to determining whether a statement is sufficiently reliable." *Ruby*, 706 F.3d at 1229. But rarely does anyone witness the crime of sexual abuse other than the victim and perpetrator. Thus, the consistency of the victim's statements as well as prior incidents may be important factors in determining the reliability of hearsay. Although Y.P.'s recitation of events became more detailed as the investigation proceeded, she told authorities substantially the same version of those events each time she recounted

11

the abuse.   Moreover, although prior incidents are not necessarily probative of later conduct, evidence of prior instances of abuse "may help establish another piece of the 'minimal indicia of reliability' necessary to consider hearsay at sentencing."   *Id*. at 1230.   Here, the PSR, to which Defendant made no objection, reported that about three years prior to abusing Y.P., Defendant was alleged to have abused D.S. when D.S. was around the same age as Y.P. at the time of the latter's abuse.[2]   D.S. was Y.P.'s cousin. Defendant had access to both girls through Y.P.'s mother, Ludivina, and reportedly acted in all instances after Ludivina had stepped away.

The foregoing discussion of where this case rests among our precedents is not intended to resolve the question of whether the district court erred in relying on the hearsay evidence about which Defendant now complains.   But one thing our discussion makes apparent is that any error is not "plain," or, in other words, "contrary to well settled law."   *Salas*, 889 F.3d at 687.   Accordingly, Defendant's sentences of imprisonment—34 months on the reentry conviction and 12 months on the supervised release violation—are

AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[2]   While Defendant was acquitted on state charges of sexually abusing D.S., we observed in *Ruby* that at sentencing "little can be inferred" from a defendant's acquittal on underlying state law charges because "a jury needs to be convinced beyond a reasonable doubt to convict a defendant, whereas a court imposing a sentence need only make a finding of fact by a preponderance of the evidence."   706 F.3d at 1230.