**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 21, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DAMON RAMON MARTINEZ,

    Defendant - Appellant.

No. 24-1078
(D.C. No. 1:23-CR-00084-DDD-1)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **MORITZ**, and **CARSON**, Circuit Judges.
_____

After Damon Ramon Martinez pleaded guilty to one count of escape from a halfway house, the district court sentenced him to 20 months' imprisonment. On appeal, Mr. Martinez raises only one sentencing issue, challenging the district court's decision not to decrease his offense level under United States Sentencing Guideline § 2P1.1(b)(3). Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Martinez pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  *See United States v. Martinez*, 860 F. App'x 584, 585 (10th Cir. 2021).  After serving time in prison for that conviction, he was in custody at a halfway house.  On October 3, 2022, he left the halfway house without authorization and never returned.

On November 28, 2022, Mr. Martinez came to the attention of police officers in Broomfield, Colorado.  The officers were responding to a complaint of shoplifting by two suspects, one male and one female.  Upon being stopped at the door of the store, the female suspect said her bag was in a car in the parking lot.  Mr. Martinez was sitting in the driver's seat of that car.  Officers discovered (1) a tube containing three fentanyl pills weighing a total of .32 grams; (2) a wallet that "fell on the ground when [Mr. Martinez was] being removed from the vehicle" that contained a credit card in the name of a person with the initials K.C., R. Vol. 1 at 44; and (3) a cell phone with an attached wallet containing a driver's license in the name of a person with the initials E.P. and a debit card in the name of a person with the initials E.L. Mr. Martinez gave the officers a false name and birthdate.  In addition, the car had been reported stolen a few weeks earlier and displayed license plates that were registered to a different vehicle.

2

Mr. Martinez was charged with four offenses in state court: (1) Criminal Possession of Financial Devices–Two or More Devices,[1] (2) Unlawful Possession of a Controlled Substance, (3) Criminal Possession of an Identification Document, and (4) Criminal Impersonation. Count 1 was a felony, while the other three counts were misdemeanors. Mr. Martinez pleaded guilty to Counts 3 and 4, and the State dismissed Counts 1 and 2.

Mr. Martinez then was charged in federal court with escape from a halfway house in violation of 18 U.S.C. § 751(a). He pleaded guilty without a plea agreement. The primary issue at sentencing was the appropriate offense level.

The Guideline for escape offenses, § 2P1.1, establishes a base offense level of 13. *See* U.S. Sent'g Guidelines Manual § 2P1.1(a)(1) (U.S. Sent'g Comm'n 2023). The base offense level is reduced by four levels "[i]f the defendant escaped from the non-secure custody of a community corrections center, community treatment center, 'halfway house,' or similar facility." *Id.* § 2P1.1(b)(3). However, "this reduction shall not apply if the defendant, while away from the facility, committed any federal, state, or local offense punishable by a term of imprisonment of one year or more." *Id.*

---

[1] The complaint and information in the record lists Count 1 as "Criminal Possession of *a* Financial Device," R. Vol. 1 at 26 (emphasis added), conforming to the title of the statute. But it then specifies the offense was in violation of "C.R.S. 18-5-903(1), (2)(b) (F6)." *Id.* Colo. Rev. Stat. § 18-5-903(2)(b) (2022) makes "[c]riminal possession of two or more financial devices . . . a class 6 felony." We thus understand Count 1 to charge Criminal Possession of Financial Devices– Two or More Devices.

The presentence report (PSR) summarized the events of November 28, 2022, and the Colorado charges. It noted attempts to contact the registered owner of the car and E.P. were unsuccessful, but K.C. and E.L. stated that their cards had been stolen from them. E.L. further stated that he did not give anyone authority to use the debit card. Ultimately, the PSR did not apply the four-level reduction under § 2P1.1(b)(3) on the ground that Mr. Martinez had committed qualifying offenses, although it did not identify which offenses might qualify.

Mr. Martinez objected, arguing the evidence was insufficient to establish he committed a felony. He pointed out that the State had dismissed Count 1, the only felony he had been charged with, and that he pleaded guilty only to misdemeanor offenses. In response, the government suggested that Mr. Martinez had committed two qualifying offenses: Criminal Possession of Financial Devices–Two or More Devices and Second Degree Aggravated Motor Vehicle Theft. A revised PSR specified the probation officer believed that Mr. Martinez had committed Criminal Possession of Financial Devices–Two or More Devices.

At sentencing, Mr. Martinez advocated for the § 2P1.1(b)(3) reduction, and the government opposed it. Relying on a police report documenting the events of November 28, 2022, and the additional information in the PSR, the prosecutor argued for both the financial devices and vehicle theft offenses. The district court found that Mr. Martinez committed Second Degree Aggravated Motor Vehicle Theft and declined to apply the § 2P1.1(b)(3) reduction.

After assessing a base offense level of 13, the court awarded Mr. Martinez a two-level reduction for acceptance of responsibility, making the offense level 11. His criminal history was category VI, resulting in a Guidelines range of 27 to 33 months' imprisonment. Mr. Martinez moved the district court to vary downward. The court granted that motion in part and sentenced him to 20 months' imprisonment.

Mr. Martinez appeals.

## DISCUSSION

### I.  Standards of Review

Because he challenges the district court's calculation of the Guidelines range, Mr. Martinez's argument involves the procedural reasonableness of his sentence. *See United States v. Ramos*, 695 F.3d 1035, 1039 (10th Cir. 2012). "We review a sentence for abuse of discretion and, in doing so, review the court's legal conclusions de novo and its factual findings for clear error." *Id.* (internal quotation marks omitted). "We have described the clear-error standard as deferential. To satisfy it, [the appellant] must leave us with a definite and firm conviction that a mistake has been made." *United States v. Martinez*, 92 F.4th 1213, 1227 (10th Cir. 2024) (citation and internal quotation marks omitted).

Consistent with our rule that "[t]he government shall bear the burden of proof for sentence increases and the defendant shall bear the burden of proof for sentence decreases," *United States v. Kirk*, 894 F.2d 1162, 1164 (10th Cir. 1990), the burden is on Mr. Martinez to show he escaped from a facility qualifying for a § 2P1.1(b)(3) reduction, and on the government to show he is not eligible for the reduction because

he committed a qualifying offense. *See* United States v. Charlesworth, 217 F.3d 1155, 1158-59 (9th Cir. 2000). There is no dispute that Mr. Martinez escaped from a halfway house, which qualifies for a § 2P1.1(b)(3) reduction. The dispute is whether the government adequately showed Mr. Martinez committed a Colorado felony after he escaped. The standard of proof is by a preponderance of the evidence. *See United States v. Robertson*, 946 F.3d 1168, 1171 (10th Cir. 2020).

## II.    Analysis

On appeal, Mr. Martinez argues that the government failed to prove all the elements of Second Degree Aggravated Motor Vehicle Theft. The government defends the district court's decision, but it also suggests that we may affirm on the alternate ground that Mr. Martinez committed Criminal Possession of Financial Devices–Two or More Devices, in violation of Colo. Rev. Stat. § 18-5-903(1), (2)(b) (2022). We may affirm on any grounds supported by the record, even grounds the district court did not consider. *See United States v. Zamora*, 97 F.4th 1202, 1213 (10th Cir. 2024). Even assuming the district court erred in determining that Mr. Martinez committed Second Degree Aggravated Motor Vehicle Theft, we uphold the denial of the § 2P1.1(b)(3) reduction because the record shows, by a preponderance of the evidence, that Mr. Martinez committed Criminal Possession of Financial Devices–Two or More Devices.

Colo. Rev. Stat. § 18-5-903 (2022) provided that "[a] person commits criminal possession of a financial device if the person has in his or her possession or under his or her control any financial device that the person knows, or reasonably should know,

6

to be lost, stolen, or delivered under mistake as to the identity or address of the account holder," § 18-5-903(1), and that "[c]riminal possession of two or more financial devices is a class 6 felony," § 18-5-903(2)(b).  A "financial device" is "any instrument or device that can be used to obtain cash, credit, property, services, or any other thing of value or to make financial payments, including but not limited to: . . . [a] credit card, banking card, [or] debit card . . . ."  *Id.* § 18-5-901(6)(a).

The first element is possession or control of a financial device.  No one disputes that the debit and credit cards recovered on November 28, 2022, were financial devices.  And the undisputed facts in the record show, by a preponderance of the evidence, that Mr. Martinez possessed or had control of both of those cards.

The initial PSR stated that Mr. Martinez possessed both the wallet that fell from the car and the cell phone wallet.  In his objections, Mr. Martinez generally challenged the evidence of possession; specifically pointed out that when questioned by police, he denied possession of the cell phone; and stated that he "made no admissions to possessing the cards to the police."  R. Vol. 1 at 22.  But as also related in the PSR, Mr. Martinez pleaded guilty to Criminal Possession of an ID Document—namely, E.P.'s driver's license, which was in the cell phone wallet.  Mr. Martinez did not dispute that fact.  The government thus showed it is more likely than not that he possessed all the contents of the cell phone wallet, including E.L.'s debit card.  Further, Mr. Martinez did not deny the factual allegation in the police report that the wallet containing K.C.'s credit card fell to the ground when he was removed from the vehicle.  Under the circumstances, the government has shown it is

7

more likely than not that Mr. Martinez possessed or had control of that wallet, and therefore the credit card.

The next element is that Mr. Martinez knew or reasonably should know that the cards were lost, stolen, or delivered under mistake as to identity. The district court stated it was persuaded as to this element, and Mr. Martinez fails to show that determination was clearly erroneous. The PSR noted that both owners confirmed to investigators that their cards had been stolen.[2] "We may infer intent and knowledge from the surrounding circumstances," *United States v. Price*, 795 F.2d 61, 63 (10th Cir. 1986), and given all the circumstances here—particularly possession of identification and financial devices in three different people's names, and a plea of guilty to criminal possession of the identification—the government showed it was more likely than not that Mr. Martinez knew or reasonably should have known the cards were lost or stolen.

---

[2] Before the district court, Mr. Martinez argued that the statements attributed to the cards' owners should be disregarded as unreliable hearsay and as incredible. "However, we have consistently held that hearsay statements may be considered at sentencing if they bear some minimal indicia of reliability." *United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012) (internal quotation marks omitted). The separate reports from these two witnesses that their cards were stolen provided some corroboration. *See United States v. Alqahtani*, 73 F.4th 835, 851 (10th Cir. 2023) (distinguishing *United States v. Fennell*, 65 F.3d 812, 813-14 (10th Cir. 1995), where we concluded that the hearsay evidence introduced at sentencing was insufficiently reliable, in part, by noting that the separate statements of two witnesses "corroborated" each other when they both similarly "described an incident"). Moreover, nothing in the record shows that the witnesses had an axe to grind. *See United States v. Ruby*, 706 F.3d 1221, 1229-30 (10th Cir. 2013).

For these reasons, we affirm the district court's decision not to reduce the base offense level under § 2P1.1(b)(3).

## CONCLUSION

We grant Mr. Martinez's motion to expedite the appeal and affirm the district court's judgment.

Entered for the Court


Jerome A. Holmes
Chief Judge