FILED
United States Court of Appeals
Tenth Circuit

July 11, 2016

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROGER DANA BARNETT,

      Defendant - Appellant.

No. 15-5055

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:14-CR-00119-GKF-1)**
_____

Submitted on the briefs:[*]

Julia L. O'Connell, Federal Public Defender, and Barry L. Derryberry, Research and Writing Specialist, Office of the Federal Public Defender, Northern District of Oklahoma, Tulsa, Oklahoma, for Defendant-Appellant.

Danny C. Williams, Sr., United States Attorney, and Clemon D. Ashley, Assistant United States Attorney, Office of the United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, for Plaintiff-Appellee.

_____

Before **KELLY**, **BRISCOE**, and **HARTZ**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

_____

Defendant Roger Dana Barnett served as Second Chief of the Muscogee (Creek) Nation in 2013 and 2014. One of his duties in that elected position was to make disbursements from the Tribe's emergency-assistance fund to tribal members who met certain conditions. He could provide assistance with money from a petty cash fund or by using a tribal debit card to make point-of-sale purchases or to make withdrawals from ATM machines. He pleaded guilty in the United States District Court for the Northern District of Oklahoma to embezzling funds from the Tribe by appropriating to his own use money withdrawn from ATM machines. *See* 18 U.S.C. § 1163. The sole issue on this appeal is whether the district court properly determined the amount of money embezzled for purposes of calculating Defendant's offense level and the amount he owes the Tribe in restitution. Based on evidence recited in the probation office's presentence report (PSR) and an addendum to that report (the Addendum), the district court found that Defendant embezzled all, not just some, of the money that he withdrew from ATM machines. Defendant asserts that the court's reliance on the PSR and the Addendum was improper because the government failed to present at sentencing any evidence of the amount of loss. We disagree. The court could properly rely on the PSR and Addendum because Defendant did not adequately challenge their recitations of the evidence concerning his defalcations. The only issue that he preserved for appeal was whether the recited evidence sufficed to support the court's determination of the amount of loss, and we hold that the evidence was sufficient. We therefore affirm Defendant's sentence. Our jurisdiction arises under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

After summarizing the description of Defendant's conduct in the PSR and Addendum, we discuss the law governing objections to a PSR, set forth Defendant's objections in the district court, hold that the objections to the factual recitations were inadequate, and conclude by holding that the unobjected-to factual recitations adequately supported the district court's findings.

## I.     The PSR and Addendum

When Defendant pleaded guilty, he admitted using his tribal debit card to make ATM withdrawals that he spent primarily on gambling.  The PSR added further detail: Applicants could obtain financial assistance from the Second Chief only after completing a form that documented tribal membership, denial of assistance from other sources, and proof of income and need.  Recipients were to provide receipts to document expenditures of emergency funds.  To provide assistance, Defendant could use a tribal debit card issued to him for both point-of-sale transactions and ATM withdrawals.  He also could use a petty-cash fund.

From April 3, 2013, through April 29, 2014, Defendant embezzled money from the emergency fund, using it for such things as gambling, purchasing goods, and gifts to others.  To obtain the money, he used the tribal debit card to make ATM withdrawals at various casinos and other businesses.  He provided no receipts for the ATM withdrawals or documentation of their purposes despite multiple requests from the Tribe.

When Defendant's expenditures eventually exhausted the emergency fund, he requested additional money.  The Tribe conducted an audit and notified the Federal Bureau of Investigation of the apparent embezzlement.  The PSR calculated the total

3

amount of Defendant's misappropriation from the Tribe as $211,880.76, which included all the ATM withdrawals.

Later the probation office filed the Addendum to the PSR. It described Defendant's duties before disbursing funds and the Tribe's documentation requirements:

> Although defendant was not required to obtain signed receipts from those to whom he provided financial assistance, he was required to verify tribal membership, denial of assistance from other resources, and proof of income and need, as stated in the request form for emergency assistance held by his office, which was revised May 14, 2013, one month after the instant offense began. Persons receiving assistance were to provide receipts to the Second Chief's Office following expenditure of any disbursements.

R., Vol. III at 15. Nevertheless, said the PSR:

> Defendant did not follow this policy when accessing funds through ATM withdrawals. The evidence shows that between April 2013, and April 2014, defendant made ATM withdrawals several times each week of various amounts, usually between $200 and $800, with the majority of the withdrawals coming from casino ATM machines. Defendant kept no receipts or documentation of the purpose for the withdrawals and admitted that he used much of the funds to gamble and provide to others to gamble.

*Id.*

According to the Addendum, this lack of documentation (despite repeated requests by the Tribe's accountant) was contrary to Defendant's practice when providing assistance using other methods of payment, and the use of the ATMs was also remarkable because petty cash often would have been available if cash assistance was needed:

> [T]here were legitimate purchases and expenditures made by defendant utilizing the debit card for point of sale purchases, for which defendant did fill out the required credit card form. In addition, most of the ATM withdrawals occurred during normal business hours when defendant had access to the petty cash fund established for use by his office, minimizing the need for use of the debit card to make ATM cash withdrawals.

4

Defendant did at times utilize the petty cash fund as authorized for legitimate disbursements and completed the required documentation. As to the ATM cash withdrawals; however, no documentation was ever completed by defendant nor was any receipt ever returned by a recipient, despite numerous emails to defendant's office sent by [the] Muscogee Creek Nation Staff Accountant, requesting such receipts, to which defendant replied he would comply and never did.

*Id.* The Addendum concluded that the loss equaled the total amount of ATM withdrawals, despite letters supporting Defendant from members of the Tribe, who did not provide sufficient detail to be helpful:

The evidence suggests that defendant complied with tribal documentation policies for most expenditures other than ATM cash withdrawals. Defendant has provided no evidence to support his contention that the amount of loss calculated in the presentence report based upon the cash withdrawn from ATMs belonging to the Muscogee (Creek) Nation should not be included . . . . Although five tribal members have provided letters stating that they have received emergency assistance from defendant, no receipts, dates, or amounts have been given and no proof exists that the assistance given to those five parties has not already been omitted from the loss amount as part of the legitimate expenditures made by point of sale purchases or petty cash disbursements that were documented by defendant.

*Id.*

## II.    Necessity of Objections to the PSR

Fed. R. Crim. P. 32(i)(3) governs the district court's use of a PSR in establishing the facts relevant to sentencing. In pertinent part it states:

At sentencing, the court:
(A) may accept any undisputed portion of the presentence report as a finding of fact; [and]
(B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . .

5

In light of this rule, we have said that "[a]t sentencing, the district court may rely on facts stated in the presentence report unless the defendant has objected to them. When a defendant objects to a fact in a presentence report, the government must prove that fact at a sentencing hearing by a preponderance of the evidence." *United States v. Harrison*, 743 F.3d 760, 763 (10th Cir. 2014) (internal quotation marks omitted).

But what constitutes an adequate objection to a recitation in the PSR? A defendant must do more than simply state that he objects to the PSR's bottom line. "[T]o invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make *specific allegations* of factual inaccuracy." *United States v. Chee*, 514 F.3d 1106, 1115 (10th Cir. 2008) (emphasis added) (internal quotation marks omitted). "An objection to the ultimate conclusions in the presentence report does not necessarily imply that a 'controverted matter' exists." *Id.* Rather, the defendant has "an affirmative duty to make a showing that the information in the presentence report was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate." *Id.* (brackets and internal quotation marks omitted); *see United States v. Rodriguez-Delma*, 456 F.3d 1246, 1253–54 (10th Cir. 2006) (district court's fact-finding obligation was not triggered by a sentence-enhancement objection that did not contest the facts supporting the enhancement).

## III.    Insufficiency of Defendant's Objections to the PSR and Addendum

Defendant did not satisfy the above requirements. Our review of the record shows that he objected to the PSR's conclusions but not the underlying facts.

6

Defendant responded to the initial PSR in three ways. First, he submitted an expert report prepared by former IRS agent Larry Cotton. It primarily relied on a civil tax case containing a short paragraph on constructive dividends—a case not relied on by Defendant on appeal. It also raised an issue about what documentation was required by the emergency-assistance program. But the district court then requested more information on the program's requirements, and, as we shall see, Defendant never challenged what the probation office set forth in its Addendum.[1]

Second, Defendant submitted letters from five tribal members who said that they received emergency assistance from him, although they did not provide receipts or otherwise describe when they received the assistance or how much they received.

---

[1] We quote the summary of the report that appears in the Addendum to establish that the report did not raise any challenge to the evidence ultimately set forth in the PSR and Addendum (the expert report is not itself in the record):

> Cotton argues that defendant was not required to obtain a signed receipt from tribal members to whom he legitimately gave financial assistance. Therefore, he contends that the loss amount should be calculated similarly to an income tax examination of a "C" corporation where certain expenses paid and deducted by the corporation without a receipt are disallowed to the corporation but not considered a constructive dividend, or income, to the majority shareholder. Defendant cites *Erickson v. Commissioner*, 598 F.2d 525, 531 (9th Cir. 1979), in support of his argument. Thus, as the total loss amount calculated in the presentence report of $211,880.79, is mostly derived from numerous ATM withdrawals made by the defendant at casino and non-casino ATMs, Cotton opines that 20% of the total withdrawals made at the three non-casino ATMs ($81,702.60), should be deducted from the loss amount. A 20% reduction from $81,702.60 is $16,340.52. Therefore, when subtracted from the currently calculated loss amount of $211,880.79, the resulting loss amount would be $195,540.27.

R., Vol. III at 14.

Third, Defendant submitted a sentencing memorandum in support of his objection to the loss calculation and an unrelated matter.  His paragraph on the calculated loss stated:

> The Government now appears to be relying on [Defendant's] failure to comply with tribal policy for his office to maintain its position regarding the loss amount. That [Defendant] failed to comply with this policy regarding emergency assistance by not submitting the required documentation, now translates into a factor in the loss equation. The Government asks this Court to assume that all ATM withdrawals were utilized for personal use. That he gambled at various casinos with tribal funds is not questioned; however, the Government cannot meet its burden to prove by a preponderance of the evidence, that the entire sum withdrawn from the ATMs' was for [Defendant's] personal use.

R., Vol. I at 16.  The memorandum did not dispute the accuracy of the evidence in the PSR and Addendum—the amount of money withdrawn and the absence of documentation—but only the inferences to be drawn from that evidence.

After these submissions by Defendant, the probation office prepared the PSR addendum, which was dated eight days before the hearing at which he was sentenced.  Counsel posed no new objections to its content.  The following exchange occurred at the outset of the hearing:

> THE COURT: . . . [H]ave you had a full, fair, and complete opportunity to discuss the contents of that presentence investigation report with Mr. Brunton as your attorney?
> THE DEFENDANT: Yes, sir.
> THE COURT: . . . I know we do have one objection here to the sentencing guidelines in the presentence investigation report. Are there any others?
> MS. COZZONI [the prosecutor]: Not that I'm aware of, Your Honor.
> MR. BRUNTON [defense counsel]: No, sir.
> THE COURT: All right. And with regard to that objection, Mr. Brunton, anything other than what you've raised in the papers?
> MR. BRUNTON: No, sir.

8

R., Vol. II at 54–55.  The court overruled Defendant's objection.  It said that disbursements made by point-of-sale transactions and petty-cash outlays were supported by the required documentation, but that none of the ATM withdrawals were.  The court discounted the letters from tribal members describing emergency assistance from Defendant because the assistance given to them could have been part of the point-of-sale transactions or from the petty-cash fund.  It also relied on Defendant's admission to using the funds to gamble, make personal purchases, and give to others.  And it noted that Defendant did not need to make ATM withdrawals during business hours, when he could access the petty-cash fund.  It included as loss all ATM withdrawals.  The following exchange with counsel then took place:

> THE COURT: Are there any objections to those findings?
> MS. COZZONI: No, Your Honor.
> THE COURT: Mr. Brunton?
> MR. BRUNTON: Other than what I've already previously filed, Judge.

R., Vol. II at 63.

Thus, Defendant did not "make specific allegations of factual inaccuracy" in the PSR or PSR addendum.  *Chee*, 514 F.3d at 1115.  He did not dispute any of the facts underlying the total-loss finding, including the amounts withdrawn and the times of the withdrawals, his access to the petty-cash fund, the documentation required of both him and third parties (as set forth in the PSR Addendum), his compliance with these requirements when making other disbursements, and the failure of third parties to provide documentation of expenditures that he attributed to the ATM withdrawals.  The sentencing court could therefore properly rely on those facts.  The only objection that

9

Defendant adequately preserved was that the facts set forth in the PSR and PSR Addendum did not support the court's conclusion regarding the amount of loss. We now turn to that objection.

### IV. Sufficiency of the Evidence

"The Government bears the burden of proving loss by a preponderance of the evidence." *United States v. Griffith*, 584 F.3d 1004, 1011 (10th Cir. 2009). We review the district court's findings for clear error. *See United States v. Mullins*, 613 F.3d 1273, 1292 (10th Cir. 2010). In overruling Defendant's objection to the loss amount, the district court reasoned:

> Based upon the totality of the factors in this case, including the fact that the defendant properly documented expenditures in cases other than ATM cash withdrawals, that the defendant admitted he used the funds to gamble or make personal purchases or gave funds to others to gamble, the fact that no one person alleged by defendant to have received benefits from the ATM withdrawals has provided a receipt, and that defendant had access to petty cash in his office and did not need to make ATM withdrawals during business hours, the court includes all ATM cash withdrawals made by the defendant for which no documentation has been provided in the court's determination of loss and finds . . . the inclusion of such withdrawals to be reasonable.

R., Vol. II at 62. We think this view of the evidence was eminently reasonable. In an unpublished opinion in similar circumstances we upheld a sentencing determination. *See United States v. Sankey*, 430 F. App'x 669, 673–74 (10th Cir. 2011) (defendant handled tribal funds in a manner that made them untraceable—by cashing cashier's checks payable to the tribe—and circumvented tribal policies meant to prevent misappropriation). The district court did not commit clear error.

10

Defendant raises an additional challenge to the restitution award. He contends that the government failed to comply with the statutory requirement that the probation office provide "to the extent practicable, a complete accounting of the losses to each victim." 18 U.S.C. § 3664(a) (1996); *see United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015) (sentencing court cannot "dispense with the necessity of proof . . . and simply 'rubber stamp' a victim's claim of loss based upon a measure of value unsupported by the evidence"). We reject the argument. The PSR provided adequate detail. There was no need for the usual accounting to apportion the loss among the victims, because there was only one victim here.

## V. CONCLUSION

We AFFIRM the district court's sentence and judgment.