FILED
**United States Court of Appeals
Tenth Circuit**

**August 9, 2022**

**Christopher M. Wolpert
Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GUY COLESTON MCDONALD,

    Defendant - Appellant.

No. 20-7052

_____

**Appeal from the United States District Court
for the Eastern District of Oklahoma
(D.C. No. 6:19-CR-00010-RAW-1)**

_____

Keith Bradley, Squire Patton Boggs (US) LLC, Denver, Colorado (Chassica Soo, Squire Patton Boggs (US) LLC, Denver, Colorado, and J. Lance Hopkins, Tahlequah, Oklahoma, with him on the briefs), appearing for Defendant-Appellant.

Michael S. Qin, Special Assistant United States Attorney, Atlanta, Georgia (Brian J. Kuester, United States Attorney, Eastern District of Oklahoma, Tulsa, Oklahoma, with him on the briefs), appearing for Plaintiff-Appellee.

_____

Before **McHUGH**, **EBEL**, and **EID**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

From 2017 to 2019, Guy Coleston McDonald dealt meth in Tahlequah, Oklahoma.

After being arrested and charged for this activity, McDonald pleaded guilty to one count

of conspiracy to violate federal narcotics laws under 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) in United States District Court for the Eastern District of Oklahoma. During the sentencing stage, the probation officer filed a presentence investigation report ("PSR"), alleging the relevant facts and calculating a guideline range of 292 to 365 months. The district court denied all of McDonald's objections to the PSR and adopted the PSR's recommendations. After denying McDonald's motion to depart downward, the court sentenced McDonald to 292 months' imprisonment.

McDonald now appeals to this Court, arguing that the district court erred in calculating his base offense level and in applying three sentencing enhancements to his sentence. Primarily, McDonald contends that it was improper for the district court to rely on the facts alleged in the PSR given his objections. Exercising jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I.     Background

### A. Undisputed factual background

From 2017 to 2019, McDonald distributed methamphetamine to multiple co-conspirators in Tahlequah, Oklahoma. Law enforcement twice discovered methamphetamine in McDonald's possession during this period. On May 29, 2018, McDonald was arrested with a smoking pipe, some marijuana, and 2.41 grams of methamphetamine. One month later, during a second arrest, officers found a clear plastic bag containing another 2.41 grams of methamphetamine on the ground near McDonald. From July to November 2018, McDonald was incarcerated in Cherokee County Jail on felony charges relating to burglary and assault. After being released on bond, McDonald

lived with a woman named Jasmine Meikle, and continued to distribute methamphetamine from their residence for about two months until January 2019. On January 10 and 14, police had a confidential informant ("CI") perform two controlled drug buys. On January 18, 2019, police executed a search warrant in McDonald's house where they discovered approximately $3,000 in cash, 1.9 grams of marijuana, 4.74 grams of methamphetamine, four cell phones, a set of digital scales, and a drug ledger. McDonald was taken into custody.

McDonald pleaded guilty to one count of conspiracy to violate federal narcotics laws under 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) in federal district court. For sentencing, the probation officer filed the PSR, alleging relevant facts and calculating a guideline range of 292 to 365 months.

## B.  The PSR and McDonald's objections below

The PSR calculated McDonald's base offense level at 32 because the quantity of meth attributable to him was higher than 1.5 kilograms, but lower than 5 kilograms. See U.S.S.G. § 2D1.1. The PSR recommended four two-level enhancements for 1) possession of a firearm under U.S.S.G. § 2D1.1; 2) use or credible threat of violence under U.S.S.G. § 2D1.1; 3) aggravated role in the offense under U.S.S.G § 3B1.1; and 4) obstruction of justice under U.S.S.G. § 3C1.1. This brought his total offense level to 40. The PSR then subtracted three levels based on his acceptance of responsibility. See U.S.S.G. § 3E1.1. Thus, McDonald's total offense level was 37. McDonald objected to the drug quantity calculation for his

3

base offense level and to three of the enhancements recommended in the PSR.[1]  The district court accepted the findings and recommendations of the PSR, rejected McDonald's objections, and sentenced McDonald to 292 months' imprisonment.

###    i.    The quantity of drugs attributable to McDonald

The PSR's "conservative estimate" of the amount of meth attributable to McDonald was 3.4 kilograms.  3 ROA at 15–16.  This was based on statements of co-conspirators, McDonald's recorded phone calls, and the amounts actually recovered by law enforcement.  The exact amounts are summarized as follows:

- Law enforcement found a total of 9.5 grams in McDonald's possession.

- Law enforcement recovered 56 grams from two controlled drug buys.

- McDonald referenced selling 680.4 grams in recorded phone calls.

- Jeremy Poafpybitty stated that he sold 17.5 grams on McDonald's behalf.

- A cooperating witness ("CW") stated that McDonald and Holmes supplied them one ounce every other day for six months (1105.6 grams).[2]

- RJ Meikle estimated that McDonald sold him 113.4 grams.

- Heather Chuculate stated that she saw McDonald obtain 340.2 grams.

- Robbie Holmes estimated that McDonald supplied him one ounce a week for 39 weeks (992.2 grams).

---

[1] McDonald made three other objections to the PSR, which are not at issue in this appeal.  He objected to, 1) the addition of criminal history points for a conviction for petit larceny, 2) the addition of two criminal history points for committing a crime under supervised release, 3) a two-level enhancement for possession of a firearm.

[2] The PSR estimated this by adding one ounce every other day for six months and dividing by two because McDonald was one of two suppliers.

- Jimi Day stated that she stored 170.1 grams on behalf of McDonald.

McDonald objected to the inclusion of the statements of his co-conspirators—RJ Meikle, Chuculate, Holmes, and Day—and CW because they lacked credibility, had potential motives to lie to law enforcement, and their statements were not corroborated.  McDonald asserted that the total "credible" quantity should be 1033.66 grams.  This would have lowered the base offense level to 30 because it is more than 500 grams, but less than 1.5 kilograms of meth.  See U.S.S.G. § 2D1.1.

### ii.    Credible threat or use of force

In determining the applicability of the threat or use of force enhancement, the PSR described a phone call from McDonald during his pretrial detention in jail instructing Day to tell her nephew that he "better do something about that" and "better handle it" regarding CI's cooperation with police.  Additionally, the PSR describes an incident where multiple sources reported that McDonald had shot an individual named Shane Rose who was indebted to McDonald.  The PSR further noted an incident where law enforcement officers responding to a 911 call at a residence were told that McDonald had broken into Keira Beaver's home and assaulted her.  Beaver stated that McDonald had threatened to kill her via text message before the incident.  The PSR also noted that CW had stated that McDonald had assaulted CW in CW's home with a .40-caliber taurus pistol.

McDonald objected to this enhancement, arguing that the phone call to Day was not a credible threat.  As to the shooting of Rose and the assault of CW,

McDonald argued that the statements lacked corroboration, and the individuals providing those statements lacked credibility.

### iii.   Obstruction of Justice

The PSR's only basis for applying an obstruction of justice enhancement was McDonald's phone call to Day during McDonald's incarceration, instructing her that her nephew "better handle" CI's cooperation with police. 3 ROA at 35. McDonald objected and argued that this was too ambiguous to demonstrate a threat and that there was no evidence that this was communicated to CI.

### iv.   Aggravated Role

In applying an enhancement for a leadership or organizer role, the PSR indicates that in recorded calls to Jasmine Meikle, McDonald provided names and numbers to contact for drugs and told her how to act while soliciting business. On September 19, 2018, he told her to "network" with someone who owed him $1,000 and to use his name for clout. Id. at 82. The PSR also indicates that McDonald directed Day to send people to Meikle to obtain methamphetamine, to conduct drug transactions, and to collect proceeds from drug transactions on his behalf.

McDonald objected to this enhancement as he maintained that the only person under his control was Day and that he was just a small-scale "street dealer." Id. at 90.

## II.   Standard of Review

At sentencing, "the government has the burden of proving by a preponderance of the evidence any findings necessary to support a sentence enhancement." United States

v. Gambino-Zavala, 539 F.3d 1221, 1228 (10th Cir. 2008).  When evaluating sentence

enhancements under the Sentencing Guidelines, this Court reviews the district court's

factual findings for clear error and questions of law de novo.  United States v. Uscanga-

Mora, 562 F.3d 1289, 1296 (10th Cir. 2009).

### III.     Discussion

**A.  The district court did not err in relying on the facts alleged in the PSR**

We first consider whether the district court could properly rely on facts in the

PSR in light of McDonald's objections.  Fed. R. Crim. P. Rule 32(i)(3) governs the

district court's use of a PSR in establishing the facts relevant to sentencing.  It states:

> At sentencing, the court: (A) may accept any undisputed portion of the presentence report as a finding of fact; [and] (B) must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . .

Thus, "the district court may rely on facts stated in the presentence report unless

the defendant has objected to them."  United States v. Harrison, 743 F.3d 760, 763 (10th

Cir. 2014).  If a defendant properly objects to a fact in a PSR, "the government must

prove that fact at a sentencing hearing by a preponderance of the evidence."  Id.  The

government can meet its burden by either presenting new evidence at sentencing or

referring to evidence presented at trial.  See id.  Here, McDonald pleaded guilty, so there

was no trial evidence, and the government presented no evidence at sentencing.  Thus, if

McDonald properly objected to a fact in the PSR, that fact could not be relied upon by the

district court in its calculations.  Undisputed facts, however, could still be relied upon.

We must then determine which facts in the PSR here have been properly objected to and which facts remain undisputed.

The majority of McDonald's objections to the facts contained in the PSR contend only that the source of the information was not credible or reliable, but they do not claim that the facts contained in the report are untrue. See, e.g., 3 ROA at 33 (objecting to the inclusion of 113.4 grams in the PSR's drug quantity calculations because the source of the information, RJ Meikle, "was making statements to law enforcement to avoid prosecution for his own criminal conduct, and his statements have not been corroborated. RJ Meikle's statements are too unreliable."). This is insufficient to raise a proper objection and trigger the district court's Rule 32 fact finding obligation. "[T]o invoke the district court's Rule 32 fact-finding obligation, the defendant is required to make 'specific allegations' of factual inaccuracy." United States v. Chee, 514 F.3d 1106, 1115 (10th Cir. 2008) (quoting Rodriguez–Delma, 456 F.3d 1246, 1253 (10th Cir. 2006)). McDonald had "an affirmative duty to make a showing that the information in the [PSR] was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate." Id. at 1115 (quoting United States v. Terry, 916 F.2d 157, 162 (4th Cir. 1990)) (emphasis added).[3]

Previously, we have said in a footnote to an unpublished opinion in United States v. Padilla, 793 F. App'x 749, 756 n.4 (10th Cir. 2019) that a challenge to the reliability of

---

[3] In other words, the defendant must assert that the facts alleged in the PSR are false. The burden of proof still remains on the government. United States v. Levy, 992 F.2d 1081, 1083 (10th Cir. 1993).

the government's evidence in the PSR is sufficient to create a factual dispute and trigger the government's fact-finding obligation. In doing so, we relied on a series of Tenth circuit cases.  Id. (citing United States v. Barnett, 828 F.3d 1189, 1193 (10th Cir. 2016); United States v. Martinez, 824 F.3d 1256, 1259, 1261 (10th Cir. 2016); United States v. Cook, 550 F.3d 1292, 1294–95 (10th Cir. 2008); United States v. Martinez-Jimenez, 464 F.3d 1205, 1207, 1208–09 (10th Cir. 2006); United States v. Keifer, 198 F.3d 798, 799–800 (10th Cir. 1999); United States v. Mateo, 471 F.3d 1162, 1167 & n.3 (10th Cir. 2006)).  However, the issue as to whether a mere objection to the reliability of the evidence in the PSR is sufficient to trigger a district court's fact-finding obligation was not before us in any of those cases cited by Padilla and so was not addressed by any of these cases.  Barnett, 828 F.3d at 1193 (holding objections not sufficient because they only contested the PSR's legal conclusions); Martinez, 824 F.3d at 1261 (assuming without deciding that the objections based on reliability were sufficient because the district court treated them as sufficient); Martinez-Jimenez, 464 F.3d at 1207, 1208–09 (same); Cook, 550 F.3d at 1294–95 ("Assuming without deciding that . . . Defendant triggered the district court's fact-finding and explanatory duties by making a showing of 'specific allegations of factual inaccuracy. . . .'"); Keifer, 198 F.3d at 799–800 (finding an objection sufficient where it specifically contested that the alleged facts were not true); Mateo, 471 F.3d at 1167 & n.3 (finding defendant's objection to the PSR insufficient where the defendant merely contested the inclusion of facts in the PSR as a matter of law).  Padilla was therefore incorrect in its statement that our prior cases determined this

9

issue. Additionally, <u>Padilla</u> is an unpublished Order and Judgment that is not binding on us.

Attacking a witness's credibility or reliability is different than asserting that their statements or information are false. <u>See</u> <u>Terry</u>, 916 F.2d at 162 (finding that facts in the PSR were not disputed where "appellant merely claimed the information concerning his breached agreement with the Maryland State's Attorney's office was unreliable. He never claimed it was inaccurate or untrue."). After all, even known liars tell the truth sometimes. Thus, we conclude that McDonald has not properly disputed facts in the PSR where he has only objected to the credibility or reliability of a source or information.

This is a position shared by the Fourth Circuit. <u>Terry</u>, 916 F.2d at 162 (4th Cir. 1990); <u>United States v. Smith</u>, 86 F.3d 1154 (4th Cir. 1996) (finding the PSR could be relied upon when neither defendant's objections "asserted that the information contained in their presentence reports is untrue. Although both argue that the information is unreliable, they have offered no support for this conclusion other than the fact that the information is hearsay."). In <u>Chee</u>, we previously cited the same test used by the Fourth Circuit. 514 F.3d at 1115 ("Mr. Chee had 'an affirmative duty to make a showing that the information in the [PSR] was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate.'" (citing <u>Terry</u>, 916 F.2d at 162)).

McDonald's remaining objections also did not properly dispute facts, as they merely contest the legal conclusions to be drawn from the facts. <u>See, e.g.</u>, 3 ROA at 35 (objecting that his phone call with co-defendant Jimi Day instructing her that McDonald's nephew "better handle it" with respect to CI cannot be considered a threat to

10

use violence or obstruction of justice). This Court has already held that objections must dispute the underlying facts and not the inferences to be drawn from those facts, United States v. Barnett, 828 F.3d 1189, 1194 (10th Cir. 2016), or the ultimate legal conclusions to be drawn from those facts, Chee, 514 F.3d at 1115.

Thus, none of McDonald's objections disputed the facts in the PSR, and the district court did not err by relying upon the facts presented in the PSR under Rule 32.

## B. The district court did not err in its calculation of the drug quantity sentencing enhancement

McDonald contends that the district court erred in relying on the PSR's calculation that 3.4 kilograms of methamphetamine was attributable to him. This led to a base offense level of 32 for "[a]t least 1.5 KG but less than 5 KG of Methamphetamine." U.S.S.G. § 2D1.1(c)(4). McDonald argues that the proper calculation should be at least 500 grams, but not more than 1.5 kilograms, which would lead to a base offense level of 30. See U.S.S.G. § 2D1.1(c)(5).

The district court made particularized findings as to the amount of drugs, as the PSR attributed each amount mentioned specifically to McDonald. United States v. Figueroa-Labrada, 720 F.3d 1258, 1265 (10th Cir. 2013) ("Proper attribution at sentencing requires the district court to analyze, and make particularized findings about, the scope of the specific agreement the individual defendant joined in relation to the conspiracy as a whole." (emphasis in original)). The district court credited McDonald's co-conspirator's statements because it found the statements were "corroborated" and made "to law enforcement . . . in Grand Jury proceedings and . . . in Rule 11

11

proceedings, [they] thereby provid[ed] a . . . sufficient indicia of reliability."[4]  2 ROA at

5; see United States v. Sells, 477 F.3d 1226, 1241 (10th Cir. 2007) ("[T]here is no

prohibition in this circuit on using co-conspirator statements . . . to establish the drug

quantity amount, even when those individuals are cooperating with the government.");

United States v. Wacker, 72 F.3d 1453, 1477 (10th Cir. 1995), modified (Mar. 11, 1996)

(quoting United States v. Garcia, 994 F.2d 1499, 1508 (10th Cir. 1993)) (finding that

---

[4] McDonald specifically takes issue with the government's argument below that Holmes' claim of receiving drugs from McDonald was corroborated by CW's statement that CW was receiving drugs from Holmes and McDonald.  McDonald argues that this would have to mean that the statements of Holmes and CW were referring to the same drugs, and so those amounts should not be double counted.  But it was not the same drugs; the amount of drugs Holmes provided to CW was excluded from the calculation of how many grams McDonald gave to CW.  Second, the government's brief clarifies that the corroboration referred to between Holmes and CW is that Holmes and CW both described buying from McDonald on a weekly basis, establishing consistency.  Even if McDonald was correct, the total quantity still does not fall below 1.5 kilograms.

drug quantity estimates are permissible provided "some basis of support in the facts of the particular case" and bears "sufficient indicia of reliability").[5]

Therefore, relying on the PSR, the district court calculated a drug quantity that was nearly two kilograms more than was required by the guidelines for a base offense level of 32; this was not error. We affirm the district court's drug quantity calculation.

### C. The district court did not err in applying a two-level sentencing enhancement for use of violence

McDonald alleges that the district court erred in applying a two-level sentencing enhancement for use of violence, making a credible threat to use violence, or directing the use of violence under U.S.S.G. § 2D1.1. We disagree.

In order to apply an enhancement under U.S.S.G. § 2D1.1(b)(2), the government had to show that McDonald "used violence," "made a credible threat to use violence," or "directed the use of violence." Here, the district court referenced both McDonald's phone call instructing Day to tell her nephew to "handle" CI's cooperation with police, and the incident where multiple sources reported that McDonald shot an individual named Shane Rose in finding this enhancement. It was

---

[5] McDonald notes that the PSR stated that CW estimated receiving "approximately one ounce every other day" from McDonald and his co-conspirator Holmes over six months, for a total "in excess of one pound" (453.59 grams). Rather than attributing 453.59 grams based on this statement, the PSR calculated one ounce every other day for six months divided by two (only half was provided by McDonald) to arrive at 1,105.6 grams. McDonald contends that the District Court erred by accepting the PSR's calculation of 1,105.6 grams rather than the more conservative estimate of one pound (453.5 grams), but even if the PSR and district court had accepted this more conservative estimate, the total drug quantity attributable to McDonald still exceeded the 1.5 kilograms necessary to support a base offense level of 32 when combined with the other drug amounts.

not clearly erroneous for the district court to find that this phone call to Day constitutes "direct[ing] the use of violence" for the enhancement. See United States v. Zarate-Suarez, 823 F. App'x 665, 668 (10th Cir. 2020) (unpublished) (finding that directing the use of violence merely requires that violence be "reasonably foreseeable" based on defendant's actions). Additionally, the PSR indicated that McDonald assaulted and threatened to kill Keira Beaver and assaulted CW with a .40 caliber taurus pistol. Given this evidence, we find that it was not clearly erroneous for the district court to determine that McDonald had used and directed the use of violence.

### D. The district court did not err in applying a two-level sentencing enhancement for obstruction of justice

McDonald contends that the district court erred in applying a two-level sentencing enhancement for "attempt[ing] to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" under U.S.S.G. § 3C1.1. To establish an attempt to obstruct justice, the government was required to show that McDonald "(1) intended to obstruct justice, and (2) committed an act that constitutes a substantial step toward the obstruction of justice." Fleming, 667 F.3d at 1107. Here, in light of all the circumstances, the district court found McDonald's statement to Day that her nephew "better handle it" in reference to CI, a government witness, was an act that constituted a substantial step towards obstruction and manifested an intent to obstruct justice. 3 ROA 35. We agree.

McDonald argues that this statement cannot constitute obstruction of justice because CI never learned of his statement.  But this enhancement requires only an attempt and does not require that obstruction actually occur.  See United States v. Hankins, 127 F.3d 932, 935 (10th Cir. 1997) ("[S]uccess is . . . not an essential element of attempt under § 3C1.1.").  "[A]ttempting to threaten or influence a witness through a third-party intermediary may constitute a substantial step sufficient to justify application of an obstruction of justice enhancement."  Fleming, 667 F.3d at 1108.  McDonald additionally contends that his words over the phone were so ambiguous that it was improper for the district court to infer they intended obstruction.  But we disagree; it was not clearly erroneous for the district court to find that McDonald intended to obstruct justice when he told a co-conspirator to "handle" or "do something about" CI's cooperation with the government.  We affirm the application of the enhancement.

### E. The district court did not err in applying a two-level sentencing for aggravating role

McDonald lastly contends that the district court erred in applying a two-level sentencing enhancement for his aggravating role as an "organizer, leader, manager, or supervisor in any criminal activity" under U.S.S.G. § 3B1.1.  While functioning as a leader requires an element of control over underlings, "to qualify as an organizer . . . no control is necessary."  United States v. Wardell, 591 F.3d 1279, 1304 (10th Cir. 2009).  Instead, functioning as an organizer entails "devising a criminal scheme, providing the wherewithal to accomplish the criminal objective, and coordinating and overseeing the

15

implementation of the conspiracy even though the defendant may not have any hierarchical control over the other participants." Id. McDonald maintains that he was a small-scale "street dealer" who sold in small quantities to individual users and that the only individual under his control was Day, who simply helped him make deliveries. Aplt. Br. at 36. But there is no requirement that the defendant organize multiple individuals; providing instructions to even one person regarding the criminal activity can satisfy this enhancement. See United States v. Uscanga-Mora, 562 F.3d 1289, 1296 (10th Cir. 2009) (affirming enhancement for leader/organizer role where the defendant merely provided instructions over the phone to one individual regarding deliveries and business).

The PSR indicates that in recorded calls to Jasmine Meikle, McDonald provided her names and numbers to contact for drugs and instructed her how to act while soliciting business. For example, on September 19, 2018, he told her to "network" with someone who owed him $1,000 and to use his name for clout. 3 ROA at 11. Further, McDonald directed Day to send people to Meikle to obtain methamphetamine, to conduct drug transactions, and to collect proceeds from drug transactions on his behalf. These undisputed facts justify the district court's finding that McDonald participated in a "leader/organizer" role as he exercised control over Day and oversaw the actions of Day and Meikle. We, therefore, affirm the application of this enhancement.

**Conclusion**

For the above reasons, we AFFIRM the district court's sentence.

16