**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 29, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JERRY LANA FREEMAN, a/k/a
Lil' Jerry,

    Defendant - Appellant.

No. 25-7025
(D.C. No. 6:24-CR-00121-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **MORITZ**, and **FEDERICO**, Circuit Judges.
_____

Jerry Lana Freeman pled guilty to conspiracy to distribute methamphetamine

in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A).  The district court

sentenced him to 224 months in prison.  Mr. Freeman appeals his sentence.

He argues the district court clearly erred by relying on co-conspirator statements to

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

calculate the drug quantity attributable to him under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").  Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

### A.  *Factual History*

On December 29, 2023, the Durant Police Department arranged a controlled purchase of methamphetamine through a confidential informant ("CI") at Mr. Freeman's residence in Hugo, Oklahoma.  Mr. Freeman and the leader of a drug trafficking organization ("DTO") were present.  During the transaction, another individual, Supplier One,[1] arrived at the residence with the methamphetamine. The CI purchased 813.8 grams.  During the ensuing investigation, law enforcement obtained statements about Mr. Freeman's involvement in methamphetamine distribution from Supplier One, the DTO's leader, and Mr. Freeman himself.

### B.  *Procedural History*

On August 14, 2024, a grand jury indicted Mr. Freeman on one count of conspiracy to distribute 50 grams or more of methamphetamine between June 16, 2023, and July 17, 2024.  He pled guilty without a plea agreement.

The U.S. Probation Office prepared a Presentence Report ("PSR").  The PSR described the offense conduct through statements from Supplier One, Mr. Freeman,

---

[1] The Government's brief refers to this individual as "Supplier One."  Aplee. Resp. Br. at 4.  So do we.

and the DTO's leader.   According to the PSR, Supplier One told law enforcement that he estimated "he sold the defendant one kilogram of methamphetamine for $3,500 per week for approximately two months between 2023 until his arrest in 2024." R. vol. II at 52.[2]  The Probation Office characterized the resulting figure—eight kilograms—as "the conservative estimate of methamphetamine the defendant received from" Supplier One. *Id.*

The PSR also described Mr. Freeman's statements to law enforcement, including his admission to purchasing one kilogram of methamphetamine from Supplier One, acting as a broker for Supplier One's other deals, and receiving three to four kilograms of methamphetamine from a second supplier.[3]  The PSR further noted the DTO leader told law enforcement Mr. Freeman sold controlled substances and usually dealt in kilogram quantities.

The PSR set Mr. Freeman's base offense level at 36 based on a total drug weight of eight kilograms of methamphetamine (mixture) and 813.8 grams of

---

[2] Material quoted from the PSR also appears in Mr. Freeman's publicly filed brief. *See United States v. Hardy*, 149 F.4th 1153, 1166 n.6 (10th Cir. 2025).

[3] Mr. Freeman later recanted portions of his first interview, claiming he received marijuana only from Supplier One.  He did not retract his statement regarding the second supplier.

methamphetamine from the controlled buy.  Combined with a criminal history category of VI and other adjustments, the Guidelines range was 292 to 365 months.[4]

Mr. Freeman filed written objections to the PSR.  Relevant here, he raised seven challenges to the PSR's description of the offense conduct, arguing that statements attributed to Supplier One, the DTO leader, and himself were inaccurate or conflicting.  He also disputed the drug quantity calculation, contending the co-conspirators' statements were unreliable and the resulting eight-kilogram estimate was inflated.

At the sentencing hearing, Mr. Freeman withdrew all seven of his objections to the offense conduct but maintained his objections to the quantity calculation. He argued that the only drug quantity the Government could "concretely put in [his] hands" was the 813.8 grams from the controlled buy.  R. vol. III at 33.

The district court overruled the objections.  Relying on "the evidence in this case, which includes the admissions of [Supplier One] as well as the Defendant and others regarding the large quantities of methamphetamine being distributed by this drug trafficking organization," the court found by a preponderance of the evidence that the eight kilograms was attributable to Mr. Freeman.  *Id.*  The court reasoned the 813.8 grams from the controlled buy "corroborates that the Defendant was receiving kilogram quantities of methamphetamine from [Supplier One]" and that "there is no

---

[4] Without the additional eight kilograms of methamphetamine (mixture), Mr. Freeman's base offense level would be 34, resulting in a Guidelines range of 235 to 293 months.

evidence that [Supplier One] was untruthful during his interview with law enforcement." *Id.* at 33–34.

The district court granted a downward variance and sentenced Mr. Freeman to 224 months in prison. Mr. Freeman timely appealed.

## II. DISCUSSION

### A. *Legal Background*

Mr. Freeman argues the district court clearly erred in calculating the drug quantity attributable to him. We review a district court's factual findings of drug quantities attributable to a defendant for clear error. *United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir. 1993). "Drug quantities used to calculate the Guidelines range are clearly erroneous when they lack factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Hardy*, 149 F.4th 1153, 1164 (10th Cir. 2025) (internal quotation marks omitted).

Because Mr. Freeman pled guilty to conspiracy to distribute 50 grams or more of methamphetamine, the amount of drugs attributable to him determines his base offense level. U.S.S.G. § 2D1.1(a)(5) (U.S. Sent'g Comm'n 2023). The government bears the burden of proving drug quantity by a preponderance of the evidence, *Ortiz*, 993 F.2d at 207, and it is not limited to evidence of the amounts of drugs actually seized. The Guidelines explain that "the defendant is accountable . . . for all quantities of contraband with which he was directly involved." U.S.S.G. § 1B1.3, cmt. n.3(D).

The district court may therefore "rely upon an estimate to establish the defendant's guideline offense level so long as the information relied upon has some basis of support in the facts of the particular case and bears sufficient indicia of reliability." *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005) (internal quotation marks omitted). In making this estimate, the court may consider "similar transactions in controlled substances by the defendant." U.S.S.G. § 2D1.1 cmt. n.5. And when a defendant does not dispute the facts in the PSR, the district court may also rely on those facts in determining the drug quantity attributable to the defendant. *United States v. McDonald*, 43 F.4th 1090, 1095–96 (10th Cir. 2022); *see* Fed. R. Crim. P. 32(i)(3)(A).

## B. *Analysis*

Mr. Freeman contends the district court clearly erred in finding him responsible for eight kilograms of methamphetamine because the estimate rested on "unreliable statements from one informant," Supplier One. Aplt. Opening Br. at 1, 8 (boldface omitted). We disagree.[5]

The district court assessed the reliability of the estimate and found the record supported it. Mr. Freeman withdrew all seven of his objections to the offense

---

[5] Mr. Freeman's opening brief characterizes Supplier One's statements as "out of court hearsay." Aplt. Opening Br. at 10. His reply brief disclaims any hearsay challenge. Reply Br. at 3 n.1 ("Appellant does not argue procedural reasonableness regarding improper hearsay at sentencing."). To the extent the hearsay nature of Supplier One's statements informs Mr. Freeman's clear-error challenge, we reject that argument for the same reasons stated in our analysis.

conduct, leaving the facts in that section of the PSR undisputed. *See McDonald*, 43 F.4th at 1095–96. The court considered those undisputed facts—including Mr. Freeman's own admissions, statements from the DTO's leader, and the 813.8 grams from the controlled buy. *See* R. vol. III at 33.

Unlike in *United States v. Hardy* and *United States v. Cripps*, relied on by Mr. Freeman, the record here does not undermine Supplier One's account. *See Hardy*, 149 F.4th at 1167 (vacating the sentence where the record contradicted the informant's drug quantity estimate); *United States v. Cripps*, No. 24-7014, 2025 WL 1444187, at *3–4 (10th Cir. 2025) (unpublished) (vacating sentence where sources gave inconsistent accounts of the defendant's scale of dealing). The drug quantity estimate is therefore neither implausible nor impermissible on the record before us, and we thus discern no clear error. *United States v. Craine*, 995 F.3d 1139, 1157 (10th Cir. 2021).

## III. **CONCLUSION**

We affirm Mr. Freeman's sentence.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge