FILED
United States Court of Appeals
Tenth Circuit

July 26, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

CORRY PURIFY,

      Defendant – Appellant.

No. 17-5113
(D.C. No. 4: 13-CR-00028-JED-29)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **MCKAY**, and **O'BRIEN**, Circuit Judges.

This case involves the forfeiture of substitute assets and nothing more.  The

district judge entered a $10 million forfeiture order against Corry Purify representing the

total proceeds arising from a large drug conspiracy of which Purify was a part.  Purify

---

[*] Oral argument would not materially assist the determination of this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  We have decided this case on the briefs.
    This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A).  Citation to unpublished decisions is not encouraged, but not prohibited. Fed. R. App. 32.1.  Citation is appropriate as it relates to law of the case, issue preclusion and claim preclusion.  Unpublished decisions may also be cited for their persuasive value.  10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished).

does not contest that order but has fought "tooth and nail" resisting the government's efforts to forfeit $2,688, which was seized from him during his arrest in a separate matter.[1]  The government, for its part, is not backing down.  The reason is obvious: it will unlikely collect little of the $10 million from Purify; the $2,688 is its only realistic chance of recouping much of anything from him.

On August 19, 2014, Purify was arrested for his role in a large drug conspiracy occurring, in relevant part, in Tulsa, Oklahoma.  He was released on bond only to be again arrested two weeks later, this time on a federal warrant arising from a separate criminal complaint charging him with being a felon in possession of a firearm.  During this arrest, officers seized $2,688 from him.  The firearm offense was added to the indictment in this case and the felon-in-possession case was dismissed.

Purify eventually pled guilty pursuant to a plea agreement to conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846.  He admitted that between September 2013 and May 2014, he "conspired with others to possess and sell at least 5 kilograms of cocaine" and "sold smaller quantities of drugs that [he] obtained from co-conspirators."  (R. Vol. 1 at 485.)  He and the government also stipulated that "the amount of cocaine was in excess of 5 kilograms but no more than 8 kilograms."  (*Id*. at 490.)  He further agreed "to the entry of a criminal forfeiture money judgment pursuant

---

[1] Purify has been represented by appointed counsel throughout these proceedings. The attorney fees for this appeal alone will likely exceed the forfeiture amount at least a couple of times over.  Given the significantly negative cost/benefit ratio, it is unlikely that a rational person would expend his money tilting at windmills; neither life nor liberty is at stake.

to 21 U.S.C. § 853(a) in the amount of $10,000,000 representing proceeds of the drug conspiracy" and to be held "jointly and severally liable" for that amount. (*Id*. at 482.) The district judge sentenced him to 120 months imprisonment (the mandatory minimum) and entered a $10 million forfeiture order.

Since that time, the government has attempted several times to amend the forfeiture order to include the $2,688 seized from Purify during his second arrest as "substitute property" under 21 U.S.C. § 853(p).[2] Its first attempt failed because it did nothing more than recite the § 853(p) standard; importantly, it did not detail the efforts it took to locate the drug proceeds. It corrected that shortcoming but Purify again objected, claiming there was no showing that the forfeiture of substitute property was necessary because the drug proceeds were rendered unavailable due to his <u>own acts or omissions</u>, rather than those of others. The government argued it was not required to show that Purify himself was so responsible because he had agreed to be held jointly and severally liable for the $10 million in drug proceeds and, as a result, the forfeiture of substitute property was appropriate where the proceeds were unavailable due to his co-conspirators' acts or omissions. The judge agreed with the government but it was a pyrrhic victory.

---

[2] The criminal forfeiture statute requires any person convicted of a serious drug crime to forfeit to the United States (1) "any property constituting, or derived from, any proceeds the person obtained, directly or indirectly" from the offense; and (2) "any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" the offense. 21 U.S.C. § 853(a) (1), (2). If drug proceeds are unavailable "as a result of any act or omission of the defendant," the court is required to order the forfeiture of "substitute property"—property untainted by the crime—up to the value of the drug proceeds. *Id*. § 853(p)(1), (2).

Purify appealed. During the pendency of that appeal, the United States Supreme Court decided *Honeycutt v. United States*, --- U.S. ---, 137 S. Ct. 1626 (2017). It held a defendant cannot "be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire"; in other words, criminal forfeiture under § 853(a) is "limited to property the defendant himself actually acquired as a result of the crime." 137 S. Ct. at 1630, 1635. In so concluding, the Court relied on the text and structure of § 853, including the substitute property provision of § 853(p). With respect to § 853(p), the Court said: "Congress did not authorize the Government to confiscate substitute property from other defendants or co-conspirators; it authorized the Government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation." *Id.* at 1634. Relying on *Honeycutt*, we rejected the government's argument that Purify could be held vicariously liable for the acts and omissions of his co-conspirators which caused the drug proceeds to be unavailable for forfeiture and reversed and remanded for further proceedings. *See United States v. Purify*, 702 F. App'x 680, 682 (10th Cir. 2017) (unpublished).

On remand, the government sought an amended forfeiture judgment of $40,000, a conservative estimate of the amount of drug proceeds Purify personally obtained as a result of the conspiracy. It also requested a judicial finding that as a result of Purify's own acts or omissions, the proceeds cannot be located, allowing for the forfeiture of the $2,688 as substitute property. It provided the affidavit of William Robert Taylor, a

Litigation Financial Analyst, who reviewed "the investigative files, FBI reports, and [Fed. R. Crim. P. 11] interviews of co-conspirators and cooperating defendants." (R. Vol. 1 at 581.) "Based upon the investigation and information provided by co-conspirators and cooperating defendants," Taylor stated that between December 2013 and May 2014, Purify "received at least 8 kilograms of cocaine that were fronted to him in single kilogram quantities." (*Id*.) He was charged $34,000 for each kilogram of cocaine but sold each kilogram of cocaine (after breaking it down into smaller quantities) for $39,000. As a result, he personally received $5,000 in profit from each kilogram of cocaine sold or $40,000 for all 8 kilograms.[3] Taylor also pointed to Purify's stipulation that the amount of cocaine he distributed was in excess of 5 kilograms but no more than 8 kilograms.

Taylor further averred that no proceeds remain available for forfeiture: Purify has not disclosed the location of the proceeds; in his financial affidavit in support of appointed counsel he claimed to have no assets; and searches of multiple databases for assets belonging to Purify yielded none. Taylor also concluded the proceeds were unavailable for forfeiture due to Purify's own acts or omissions.

Purify again objected, this time claiming there was no legal authority to amend the forfeiture judgment to $40,000 but, even if there was, the government failed to provide

---

[3] Taylor also stated Purify was fronted 400 pounds of marijuana during the same six-month period. He was charged $500 for each pound but sold each pound for $550. He received total gross proceeds and total profits of $220,000 and $20,000, respectively. Because the government does not rely on the marijuana proceeds, we will not consider them.

any evidence establishing that he personally obtained proceeds from the drug conspiracy or that he made those proceeds unavailable as a result of his own acts or omissions.

The judge declined to amend the forfeiture judgment. While recognizing that the $10 million judgment had been undermined by *Honeycutt*, he decided there was no basis to revisit it in this case because Purify never timely appealed from it and the time for doing so had long since expired.[4] He did, however, grant the government's motion for forfeiture of the $2,688 as substitute property. He accepted Taylor's affidavit that Purify received between 5 and 8 kilograms of cocaine and sold each kilogram for $39,000. As a result, Purify received between $195,000 (5 kilograms) and $312,000 (8 kilograms) in gross proceeds.[5] The judge also concluded the government had sufficiently shown those proceeds to have become unavailable due to Purify's own acts or omissions. Taylor's affidavit set forth his futile efforts to locate the drug proceeds. Given that Purify had received a considerable amount of drug proceeds and now has no assets to his name, the judge decided it was reasonable for Taylor to infer that the proceeds were dissipated due to Purify's own acts or omissions, including payment to co-conspirators for the drugs fronted to him.

That brings us to this appeal. Purify again claims the judge erred in ordering the

---

[4] Purify does not challenge this ruling in this appeal.

[5] Although the government limited its forfeiture money judgment request to the net profits Purify received from his cocaine sales ($40,000), as the judge recognized, § 853(a) "contemplates [forfeiture of] gross proceeds and not merely profits." *See United States v. Keeling*, 235 F.3d 533, 537 (10th Cir. 2000).

forfeiture of the $2,688 as substitute property. This time, however, he argues the judge's reliance on Taylor's affidavit to decide the amount of monetary proceeds he personally obtained and dissipated—$312,000—was error because the affidavit was based on impermissible hearsay—the investigative files and the interviews of co-conspirators and cooperating witnesses. The government does not dispute that Taylor's affidavit contains hearsay, if not double hearsay. Nevertheless, Purify has two strikes against him.

First, he concedes plain error review applies because he did not raise his hearsay argument with the district court. To prevail, Purify must show "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."[6] *United States v. Beierle*, 810 F.3d 1193, 1200 (10th Cir. 2016) (quotation marks omitted). This is a "demanding standard" that is "difficult to overcome." *United States v. Rosales-Miranda*, 755 F.3d 1253, 1258 (10th Cir. 2014) (quotation marks omitted). "[W]e will find plain error only when an error is particularly egregious and the failure to remand for correction would produce a miscarriage of justice." *Id*. (quotation marks omitted). Second, he admits he has to show that the hearsay relied upon by the judge fails to satisfy due process, which is

---

[6] Recently, the United States Supreme Court held that a miscalculation of a guideline range which is plain and which affects the defendant's substantial rights will, in the ordinary case, satisfy the fourth prong of plain error review. *See Rosales-Mireles*, --- U.S. ---, 138 S. Ct. 1897, 1903 (2018). It does not appear *Rosales-Mireles* would apply to forfeiture orders. Nevertheless, we need not decide that issue because Purify has failed to satisfy the first prong of plain error review.

a "low hurdle" requiring only that it "bear some minimal indicia of reliability."[7] *See*

*United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013) (quotation marks omitted);

*United States v. Damato*, 672 F.3d 832, 847 (10th Cir. 2012) (quotation marks omitted).

Undeterred, Purify argues the hearsay within Taylor's affidavit is not sufficiently

reliable because it allegedly comes from co-conspirators and cooperating defendants,

whose veracity is unknown. Taylor did not personally interview them nor did he indicate

whether they had first-hand knowledge of the drug proceeds, if any, that Purify

personally obtained as a result of his role in the conspiracy. Purify also claims their

status as co-conspirators and cooperating defendants weighs against their veracity as they

may have a motive to lie or to pin the blame on others. He also tells us nothing in the

affidavit or record corroborates the allegation that he personally sold 5 to 8 kilograms of

cocaine for total proceeds up to $312,000. While he admitted he <u>conspired</u> to distribute

between 5 and 8 kilograms of cocaine, he never admitted he <u>personally</u> distributed those

amounts or obtained drug proceeds as a result. His only admission as to his personal

distribution was that he sold smaller quantities of drugs that he obtained from co-

---

[7] Due process, not the Federal Rules of Evidence, is the benchmark. Criminal forfeiture is part of the punishment for an offense and therefore an element of the sentence imposed. *Libretti v. United States*, 516 U.S. 29, 39 (1995). As Purify acknowledges, sentencing judges are not bound by the Federal Rules of Evidence and can rely on hearsay, even double hearsay, if it comports with due process, which requires it to "bear some minimal indicia of reliability." *See United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013) (quotation marks omitted); *see also* USSG § 6A1.3 cmt. ("In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy." (citations omitted)); *United States v. Basnett*, 735 F.3d 1255, 1261 (10th Cir. 2013) (double hearsay).

conspirators. Importantly, there is no information as to those amounts or the proceeds resulting from those sales. We see it differently.

First, had those arguments been raised in the district court their factual predicates could have been explored and resolved. Beyond that, Taylor credibly claimed to have received the information concerning the amounts of cocaine and proceeds Purify personally distributed and obtained from the investigative files, FBI reports, and interviews of co-conspirators and cooperating defendants. "Nothing in the record suggests his account of any of the interviews or . . . reports was incorrect or otherwise unreliable." *United States v. Garcia*, 279 F. App'x 616, 623 (10th Cir. 2008) (unpublished). And those amounts are corroborated by Purify's own admissions, the presentence report (PSR), and the facts found by the grand jury as set forth in the indictment. *See Ruby*, 706 F.3d at 1229 ("Corroborating evidence is often key to determining whether a statement is sufficiently reliable.").

Purify admitted in the plea agreement that he conspired with others to possess and sell at least 5 kilograms of cocaine and sold smaller quantities of drugs he obtained from his co-conspirators. In that same agreement, he and the government agreed the amount of cocaine was between 5 and 8 kilograms. At the change of plea hearing, he admitted "Heron Ramirez delivered anywhere from 5 to 10 kilograms of cocaine to [him] and co-conspirators." (R. Vol. 2 at 51.) And the PSR recounted the offense conduct as follows: Sergio Gonzalez sold cocaine from Mexico in kilogram quantities to Heron Marquez Ramirez, who in turn sold it to Purify and three other co-conspirators. Between

December 2013 and May 2014, Ramirez delivered between 8 and 10 kilograms of cocaine to Purify, at least two of which were delivered to him at an address belonging to the mother of his children and to which he was associated. Although Purify raised specific objections to the PSR, he did not object to these allegations; they are deemed admitted. *See United States v. Walters*, 269 F.3d 1207, 1213 (10th Cir. 2001) ("[U]nder the law of this circuit," when a defendant does "not challenge the accuracy of the relevant facts contained in the PSR . . . they are deemed admitted as true.").

Similarly, the grand jury found the following overt acts:[8] (1) unindicted co-conspirator #23 delivered a kilogram of cocaine to co-defendant Donald Walter in Fall 2013 in exchange for $32,000; (2) co-conspirator #23 delivered one kilogram of cocaine to Purify in January or February 2014; (3) on March 6, 2014, co-defendants Donald and Mario Walters engaged in a telephone conversation intercepted on target telephone #5[9] in which they discussed "how co-conspirator #38 was supposed to get drug proceeds from

---

[8] We recognize "[a] grand jury proceeding is not an adversary hearing in which the guilt or innocence of the accused is adjudicated. Rather, it is an ex parte investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *United States v. Calandra*, 414 U.S. 338, 343-44 (1974). Nevertheless, Taylor's information is consistent with that found by the grand jury and is therefore telling for purposes of deciding whether that information is sufficiently reliable for purposes of satisfying due process. Moreover, the government relies on the grand jury's findings in its brief and Purify did not object to that reliance in his reply brief.

[9] The indictment provides a "TT" citation each time a finding is supported by an intercepted telephone conversation. A review of the district court docket reveals "TT" refers to the target telephone that was intercepted.

Purify on the trip to Tulsa"; (4) on April 9, 2013, co-defendant Mario Walters and co-conspirator #44 participated in a telephone conversation intercepted on target telephone #7 in which co-conspirator #44 wanted to know the price of an ounce of cocaine and Walters said it would cost "a stack," meaning $1,000;[10] (5) on April 9, 2014, Purify and co-conspirator #23 agreed in a telephone conversation intercepted on target telephone #8 to distribute one kilogram of cocaine; Purify told co-conspirator #23 that he "could sell the kilogram quickly so co-conspirator #23 can have the money to take 'south'"; (6) on April 9, 2014, Purify and co-conspirator #23 participated in a telephone conversation intercepted on target telephone #8 in which Purify told co-conspirator #23 that he had $10,000 for the kilogram of cocaine and could obtain "a few more thousand dollars after 'I get rid of my kids' (so he can go collect)"; and (7) from April 29, 2014, to May 1, 2014, co-conspirator #23 and an unidentified male engaged in a series of telephone conversations intercepted on target telephone #11 in which they discussed the price of cocaine as $26,000 to $27,500 per kilogram. (R. Vol. 1 at 290-91, 335, 357, 372-73, 377). These findings corroborate Taylor's statements that Purify received the cocaine in one kilogram quantities and paid $34,000 for each kilogram.

Purify's argument that his admissions concerning the quantities of cocaine he conspired to sell cannot be used against him after *Honeycutt* is unavailing. Although a defendant cannot be held jointly and severally liable for property that only his co-

---

[10] Because there are approximately 35 ounces in one kilogram, a kilogram of cocaine would cost $35,000.

conspirators derived from the crime, it appears from Purify's admissions that the 5 to 8 kilograms was the amount of cocaine he personally distributed. After all, the conspiracy count to which he pled involved substantially higher quantities of crack cocaine, cocaine, and marijuana and over $10 million in drug proceeds. Nevertheless, Taylor relied only in part on these admissions in establishing the amounts of cocaine he personally distributed. He also relied on his review of the investigative files and the interviews of co-conspirators and cooperating defendants. And, as already discussed, the amounts of cocaine derived from that review, as well as the proceeds personally attributed to Purify, are corroborated by the PSR's un-objected to findings as well as the findings of the grand jury. Those findings indicate he received at least 2 kilograms but up to 10 kilograms of cocaine for distribution and had, at the very least, $10,000 to pay for one of those kilograms, which easily exceeds the $2,688 sought to be forfeited as substitute property in this case.

**AFFIRMED.**

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

- 12 -